UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UKRAINIAN FUTURE CREDIT          Case No: 2:17-cv-11483-MEL-SDD
UNION, a state chartered credit  Hon. Matthew F. Leitman
union,                           Mag. Judge Stephanie Dawkins Davis.

       Plaintiff,

vs.

WILLIAM R. SEIKALY, an individual,
JOHN/JANE DOE, an individual,
SEIKALY, STEWART & BENNETT,
P.C., a Michigan professional corporation,

       Defendants.

_____/

# DEFENDANTS WILLIAM R. SEIKALY AND SEIKALY, STEWART & BENNETT, P.C.'S MOTION TO DISMISS

Defendants William R. Seikaly and Seikaly, Stewart & Bennett, P.C. ask this Court to enter an order dismissing Plaintiff Ukrainian Future Credit Union's claims against them under Fed. R. Civ. P. 12(b)(6) or abstaining under *Colorado River*. In support of this motion, Seikaly and Seikaly, Stewart & Bennett rely on the attached brief.

On July 18, 2017, the Seikaly Parties' attorney (Trent Collier) contacted the Credit Union's attorney (James Bigelow) via email. The email provided a synopsis

of each of the Seikaly Parties' arguments and requested concurrence under Local

Rule 7.1. The Credit Union replied, and stated that it did not concur.

<div align="center">

Respectfully submitted,

Collins Einhorn Farrell PC

</div>

By:   */s/ Trent B. Collier*
        Michael J. Sullivan (P35599)
        Trent B. Collier (P66448)
        Kellie Howard Goudy (P69009)
        4000 Town Center, 9th Floor
        Southfield, MI 48075
        (248) 355-4141
        michael.sullivan@ceflawyers.com
        trent.collier@ceflawyers.com
        kellie.howard-goudy@ceflawyers.com
        *Attorneys for Defendants William Seikaly*

Dated: July 19, 2017        *and Seikaly, Stewart & Bennett, P.C.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UKRAINIAN FUTURE CREDIT UNION,
a state chartered credit union,

      Plaintiff,                         Case No: 2:17-cv-11483-MEL-SDD
                                            Hon. Matthew F. Leitman

vs.

WILLIAM R. SEIKALY, an individual,
JOHN/JANE DOE, an individual,
SEIKALY, STEWART & BENNETT, P.C.,
a Michigan Professional Corporation,

      Defendants.

_____/

## BRIEF IN SUPPORT OF WILLIAM R. SEIKALY AND SEIKALY, STEWART & BENNETT, P.C.'S MOTION TO DISMISS

                            Collins Einhorn Farrell PC
                            Michael J. Sullivan (P35599)
                            Trent B. Collier (P66448)
                            Kellie Howard Goudy (P69009)
                            4000 Town Center, 9th Floor
                            Southfield, MI 48075
                            (248) 355-4141
                            michael.sullivan@ceflawyers.com
                            trent.collier@ceflawyers.com
                            kellie.howard-goudy@ceflawyers.com
                            *Attorney for Defendants William Seikaly*
Dated: July 19, 2017                  *and Seikaly, Stewart & Bennett, P.C.*

# TABLE OF CONTENTS

*Index of Authorities* .................................................................................iv

*Statement of Disclosure of Corporate Affiliations and Financial Interest* .............vii

*Concise Statement of Issues Presented* ................................................. viii

*Controlling or Most Appropriate Authority* ..............................................xi

*Introduction* .......................................................................................... 1

*Facts and Procedural History* ................................................................. 3

    A.  The Credit Union sues the Seikaly Parties' client in Macomb County........... 3

    B.  The parties discover the accidental inclusion of social security numbers and the Seikaly Parties immediately offer to redact them. ............................ 4

    C.  The Credit Union re-raises its allegations about "larceny." ........................... 5

    D.  The Credit Union seeks relief from the Michigan Court of Appeals. ............. 6

*Standard of Review* ............................................................................... 7

*Argument 1: Computer Fraud & Abuse Act* ............................................ 8

The Computer Fraud & Abuse Act prohibits accessing a protected computer or computer network. The Credit Union claims that the Seikaly Parties have documents they shouldn't, but it doesn't allege facts suggesting that the Seikaly Parties actually accessed a protected computer or computer network. Therefore, the Credit Union's claim fails under Rule 12(b)(6). .......................................... 8

*Argument 2: Conversion* ........................................................................*10*

Conversion is the wrongful exercise of dominion over another's property. The Credit Union alleges that the Seikaly Parties converted the roster, a letter, a management report and other, unidentified documents. But it offers no factual allegations about where those documents came from. Therefore, the Credit Union hasn't alleged the factual basis for a conversion claim. ..........................10

*Argument 3: Social Security Number Privacy Act* .................................*12*

Under Michigan's Social Security Number Privacy Act, "an individual" may pursue a claim based on misuse of a social security number. An "individual" means a single human being. Indeed, the Act's definition of "person" distinguishes "an individual" from companies, corporations, and other legal entities. Therefore, the Credit Union's claim is invalid. .....................................12

*Argument 4: Identity Theft Protection Act* ............................................*14*

The Identity Theft Protection Act prohibits the use of another's personal identifying information for unlawful purposes. The Credit Union alleges that the Seikaly Parties obtained and possessed others' personal identifying information; that's not *using* other's personal identifying information within the intent of the statute. Moreover, the Credit Union lacks standing to pursue a claim based on third parties' personal information. .................................................................14

4.1   The Credit Union hasn't pleaded facts suggesting that the Seikaly Parties used personal identifying information to commit an "unlawful act." ........................................................................15

4.2   Even if the Credit Union could state a valid claim under the Identity Theft Protection Act, it lacks standing to pursue a claim based on third parties' personal identifying information. 16

*Argument 5: Conspiracy* ........................................................................*17*

Under Michigan law, a conspiracy claim requires a valid, underlying tort. As shown in this brief, the Credit Union has not pleaded a valid, underlying tort. Therefore, the Court should dismiss its conspiracy claim as well........................17

*Argument 6: Abuse of Process* .................................................................................*18*

To state an abuse-of-process claim, a plaintiff must allege something more than a desire to harass the plaintiff and harm its reputation. Here, the Credit Union alleges that the Seikaly Parties abused the discovery process in the state-court action to harass the Credit Union and harm its reputation. Accordingly, its abuse-of-process claim fails as a matter of law. .........................................................18

*Argument 7: Supplemental Jurisdiction* ...................................................................*20*

The Credit Union asserts federal jurisdiction based on a skeletal and fact-deficient claim under the Computer Fraud & Abuse Act. If the Court doesn't dismiss all of the Credit Union's state-law claims based on the arguments detailed above, it should decline to exercise supplemental jurisdiction over those claims after dismissing the Credit Union's only federal claim. .........................20

*Argument 8: Colorado River Abstention* ....................................................................*21*

Under *Colorado River*, a federal court may abstain from exercising jurisdiction until parallel state-court proceedings have concluded. The Credit Union's state-court appeal is based on the same operative facts and seeks some of the same relief as the Credit Union's complaint in this case. If the Court doesn't dismiss the Credit Union's complaint under Rule 12(b)(6), it should stay this action until related state-court proceedings end. .................................................21

*Conclusion*..............................................................................................................*25*

# INDEX OF AUTHORITIES

*Cases*

*Amini v. Oberlin Coll.,* 259 F.3d 493 (6th Cir. 2001) ............................................. 8

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................7, 11

*Bates v. Van Buren Twp.,* 122 Fed. Appx. 803 (6th Cir. 2004)............................25

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) .......................................7, 11

*Bonner v. Chicago Title Ins. Co.,* 487 N.W.2d 807 (1992)....................................19

*Brody v. Genpact Services, LLC,* 980 F. Supp. 2d 817 (E.D. Mich. 2013) ............13

*City of Coldwater v. Consumers Energy Company,*
    895 N.W.2d 154 (Mich. 2017) ........................................................................13

*Clark v. Lacy,* 376 F.3d 682 (7th Cir. 2004)........................................................23

*Colorado River v. U.S.,* 424 U.S. 800 (1976) ...................... ix, 2, 21, 22, 23, 24, 25

*Crawley v. Hamilton County Comm'rs,* 744 F.2d 28 (6th Cir. 1984)....................22

*Dalley v. Dykema Gossett PLLC,* 788 N.W.2d 679 (Mich. Ct. App. 2010) ..........19

*Dep't of Agric v. Appletree Mktg., L.L.C.,* 779 N.W.2d 237 (Mich. 2010) ............11

*Early Detection Ctr., P.C., v. New York Life Ins. Co.,*
    403 NW2d 830, (Mich. Ct. App. 1986) .......................................................ix, 19

*Fenestra, Inc v. Gulf Am. Land Corp.,* 141 NW2d 36 (Mich. 1966)................ix, 17

*Ford Motor Company v. Ghreiwati Auto,*
    945 F. Supp. 2d 851 (E.D. Mich. 2013)..........................................................13

*Foremost Ins Co v Allstate Ins Co,* 486 N.W.2d 600 (Mich. 1992) .................ix, 11

*Hensley Manufacturing v. ProPride, Inc.,* 579 F.3d 603 (6th Cir. 2009)..............10

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................16

*Mays v. Three Rivers Rubber Corp,* 352 N.W.2d 339 (Mich. Ct. App. 1984) ........17

*Moses H. Cone Memorial Hosp. v. Mercury Const. Co.,* 460 U.S. 1 (1983) ..........22

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007) ...........16, 17

*Romine v. Compuserve Corp.,* 160 F.3d 337 (6th Cir. 1998) ..........................21, 22

*Taylor v. Campanelli,* 29 F. Supp. 3d 972 (E.D. Mich. 2014) ........ ix, 21, 22, 23, 24

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State,* 454 U.S. 464 (1973) ..................................................................17

*Widgren v. Maple Grove Twp.,* 429 F.3d 575 (2005) ...........................................20

**Statutes**

18 U.S.C. 1030 ........................................................................viii, 2, 5, 8, 24

18 U.S.C. 1030(a)(4) ........................................................................8, 10

28 U.S.C. § 1367(a) ........................................................................20

28 U.S.C. § 1367(c)(3) ........................................................................20

28 U.S.C. 1367 ........................................................................ viii

MCL 445.61 ........................................................................ viii, 2, 14

MCL 445.63 ........................................................................ 5

MCL 445.65 ........................................................................14, 16

MCL 445.81 ........................................................................ viii, 2, 12

MCL 445.82(e) ........................................................................13

MCL 445.83 ..............................................................................................12

MCL 445.86 .......................................................................................12, 14

**Other Authorities**

http://www.merriam-webster.com/dictionary.......................................................13

**Rules**

E. D. Mich. L.R. 83.4................................................................................ iv

Fed. R. Civ. P. 12(b)(6)........................................................ v, vii, 2, 8, 10, 15, 25

# STATEMENT OF DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to E. D. Mich. L.R. 83.4, Defendant Seikaly, Stewart & Bennett, P.C. makes the following disclosure:

1. Is said corporate party a subsidiary or affiliate of a publicly owned corporation? **No**.

If the answer is yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party. **n/a**

2. Is there a publicly owned corporation or its affiliate, not a party to the case, that has a substantial financial interest in the outcome of the litigation? **Yes.**

If the answer is yes, list the identity of such corporation or affiliate and the nature of the financial interest. **Seikaly, Stewart & Bennett, P.C. is insured by a subsidiary of AmTrust Financial Services, a publicly traded corporation.**

Respectfully submitted,

Collins Einhorn Farrell PC

By: */s/ Trent B. Collier*
Michael J. Sullivan (P35599)
Trent B. Collier (P66448)
Kellie Howard Goudy (P69009)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
kellie.howard-goudy@ceflawyers.com
*Attorney for Defendants William Seikaly*
Dated: July 19, 2017                     *and Seikaly, Stewart & Bennett, P.C.*

vii

## CONCISE STATEMENT OF ISSUES PRESENTED

1. The Computer Fraud & Abuse Act prohibits accessing a protected computer or computer network. The plaintiff claims that the defendants have documents they shouldn't, but it doesn't allege facts suggesting that the defendants actually accessed a protected computer or computer network. Does the Credit Union's claim survive under Fed. R. Civ. P. 12(b)(6)?

   Plaintiff presumably answers:                    Yes.

   Defendants answer:                               No.

   This Court should answer:                        No.

2. Conversion is the wrongful exercise of dominion over another's property. The plaintiff alleges that the defendants converted an employee roster, a letter to a third party, a management report and other, unidentified documents. But it offers no factual allegations about where those documents came from. Has the plaintiff alleged the factual basis for a conversion claim under Michigan law?

   Plaintiff presumably answers:                    Yes.

   Defendants answer:                               No.

   This Court should answer:                        No.

3. Under Michigan's Social Security Number Privacy Act, "an individual" may pursue a claim based on misuse of a social security number. An "individual" means a single human being. Indeed, the Act's definition of "person" distinguishes "an individual" from companies, corporations, and other legal entities. Has the plaintiff pleaded a valid claim under the Social Security Number Privacy Act?

Plaintiff presumably answers:                Yes.

Defendants answer:                           No.

This Court should answer:                    No.

4. The Identity Theft Protection Act prohibits the use of another's personal identifying information for unlawful purposes. The plaintiff alleges that the defendants obtained and possessed others' personal identifying information; that's not *using* other's personal identifying information within the meaning of the act. Moreover, the plaintiff is asserting a claim based on third parties' personal information, which plaintiff has no standing to bring. Has the plaintiff pleaded a valid claim under this act?

Plaintiff presumably answers:                Yes.

Defendants answer:                           No.

This Court should answer:                    No.

5. Under Michigan law, a conspiracy claim requires a valid, underlying tort. As shown throughout this brief, the plaintiff has not pleaded a valid, underlying tort. Can the plaintiff's conspiracy claim stand?

Plaintiff presumably answers:                Yes.

Defendants answer:                           No.

This Court should answer:                    No.

6. To state an abuse-of-process claim, a plaintiff must allege something more than a desire to harass the plaintiff and harm its reputation. Here, the plaintiff alleges that an attorney representing his client abused the discovery process in the state-court action to harass the plaintiff and harm its reputation. Has the plaintiff pleaded a valid abuse-of-process claim?

| | |
|---|---|
| Plaintiff presumably answers: | Yes. |
| Defendants answer: | No. |
| This Court should answer: | No. |

7. The plaintiff asserts federal jurisdiction based on a skeletal and fact-deficient claim under the Computer Fraud & Abuse Act. If the Court dismisses this invalid federal claim and state-law claims remain, should the Court decline to exercise supplemental jurisdiction?

| | |
|---|---|
| Plaintiff presumably answers: | No. |
| Defendants answer: | Yes. |
| This Court should answer: | Yes. |

8. Under *Colorado River*, a federal court may abstain from exercising jurisdiction until parallel state-court proceedings have concluded. The plaintiff's state-court appeal is based on the same operative facts and seeks some of the same relief as its complaint in this case. If the Court doesn't dismiss the Credit Union's complaint under Rule 12(b)(6), should it stay this action until related state-court proceedings end?

| | |
|---|---|
| Plaintiff presumably answers: | No. |
| Defendants answer: | Yes. |
| This Court should answer: | Yes. |

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. Computer Fraud & Abuse Act

   18 U.S.C. 1030

2. Conversion

   *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600 (Mich. 1992).

3. Social Security Number Privacy Act

   MCL 445.81, *et seq.*

4. Identity Theft Protection Act

   MCL 445.61, *et seq.*

5. Conspiracy

   *Fenestra, Inc v. Gulf Am. Land Corp.*, 141 NW2d 36 (Mich. 1966)

6. Abuse of process

   *Early Detection Ctr., P.C., v. New York Life Ins. Co.*, 403 NW2d 830, (Mich. Ct. App. 1986).

7. Supplemental jurisdiction

   28 U.S.C. 1367

8. *Colorado River* abstention

   *Colorado River v. U.S.,* 424 U.S. 800 (1976)

   *Taylor v. Campanelli,* 29 F. Supp. 3d 972 (E.D. Mich. 2014)

## INTRODUCTION

This case is the product of *Ukrainian Future Credit Union v. Garak,* an action now pending in the Michigan Court of Appeals. In the state action, Defendants William Seikaly and Seikaly, Stewart & Bennett, P.C. (the "Seikaly Parties") represent Lidia Shibanov, a former employee of Plaintiff Ukrainian Future Credit Union. The Credit Union accuses Shibanov of facilitating a fraudulent loan. In May and June 2016, the Seikaly Parties filed a renewed summary-disposition motion and a supplemental brief on Shibanov's behalf. Attached to both briefs was a roster of the Credit Union's employees and board members. The Seikaly Parties didn't notice it at the time, but the roster included the employees' social security numbers.

The Credit Union apparently overlooked the social security numbers, too, because it didn't notify the Seikaly Parties about the error for another four months. The Seikaly Parties immediately offered to redact social security numbers from the roster. But the Credit Union refused to stipulate to fix the error by redacting the numbers. It alleged that the Seikaly Parties obtained the roster and two other documents through "larceny." The Macomb County Circuit Court rejected the Credit Union's various demands for relief and later dismissed all of its claims. The Credit Union is appealing those orders in state court. And, with this action, it's attempting to turn a state-court discovery dispute into a federal lawsuit.

1

The Court should dismiss each of the Credit Union's claims:

- The Credit Union's claim under the Computer Fraud & Abuse Act, 18 U.S.C. 1030, is invalid under Fed. R. Civ. P. 12(b)(6) because it lacks supporting factual allegations;

- Its conversion claim doesn't allege what all the documents at issue are or where they came from. Even accepting the Credit Union's allegations as true for purposes of this motion, there's no factual basis to find the wrongful exercise of dominion over another's property;

- The Credit Union's claim under Michigan's Social Security Number Privacy Act, MCL 445.81, *et seq.,* fails because only an "individual" can pursue a civil action under that statute;

- Its claim under the Identity Theft Protection Act, MCL 445.61 fails because it hasn't alleged one of the necessary elements and because it doesn't have standing;

- Its conspiracy claim fails because the Credit Union hasn't alleged a valid, underlying tort; and

- Its abuse-of-process claim fails because it hasn't alleged a valid ulterior purpose under Michigan law.

If any state-law claims remain after the Court dismisses the Credit Union's claim under the Computer Fraud & Abuse Act, the Court should decline to exercise its supplemental jurisdiction.

Alternatively, the Court should stay this case under *Colorado River v. U.S.,* 424 U.S. 800 (1976), until Michigan's courts resolve the Credit Union's appeal. Many of the Credit Union's arguments in the Michigan Court of Appeals are substantially similar to arguments it raises here, and it seeks some of the same relief. The legal headings may be different, but the factual allegations are the same.

2

## FACTS AND PROCEDURAL HISTORY

### A. The Credit Union sues the Seikaly Parties' client in Macomb County.

In 2015, the Credit Union sued Lidia and Vasily Shibanov, Andrii and Svitlana Garak, and others in the Macomb County Circuit Court. See *Ukrainian Future Credit Union v. Garak,* Macomb County Circuit Court Case No. 15–0524–CZ. The Seikaly Parties represented Lidia Shibanov. The Credit Union alleged that Shibanov facilitated a loan for the Garaks when Shibanov knew the loan was really for Ihor and Oksana Holyk. (**Exhibit 1,** Opinion and Order, dated September 2, 2016, at 1). The transaction supposedly left the Credit Union undersecured.

In May 2016, Shibanov filed a motion for summary disposition. The Seikaly Parties didn't realize it, but a roster attached as an exhibit included the social security numbers of certain Credit Union employees and board members. (Complaint, Doc. 1, PgID 4, ¶ 10). The Seikaly Parties filed a supplemental brief in June 2016 that included the same one-page roster with social security numbers. (*Id. See also* **Exhibit 2**, Macomb County Circuit Court Docket). Neither the Credit Union nor the Seikaly Parties noticed the error.

The Seikaly Parties also used a copy of the roster at the June 9-10, 2016 deposition of Credit Union manager Andrew Jakymowych. (Complaint, Doc. 1, PgID 3-4, ¶ 9. *See also* Ex. 1, Opinion and Order, at 23). Again, *no one* noticed that the roster included social security numbers. In September 2016, Judge

3

Druzinski granted summary disposition in Shibanov and Holyk's favor on all claims except breach of fiduciary duty. (Ex. 1, Opinion and Order, September 2, 2016, at 1).[1] She deferred ruling on that claim until the parties completed Shibanov and Jakymowych's depositions. (*Id.* at 18).

### B. The parties discover the accidental inclusion of social security numbers and the Seikaly Parties immediately offer to redact them.

In October 2016, the Credit Union pointed out that the roster included social security numbers. Immediately, Seikaly offered to stipulate to an order redacting the social security numbers. The Credit Union's attorney never responded to this offer. Instead, the Credit Union filed a motion to remove the following documents from the court file: (a) the roster, (b) a letter the Credit Union submitted to the State of Michigan Credit Union Examiner, and (C) a copy of a management report. (Complaint, Doc. 1, PgID 4, ¶¶ 11-12). Each document was an exhibit to a brief the Seikaly Parties filed for Shibanov.

Judge Druzinski held a hearing on the Credit Union's motion on October 17, 2016. Noting that the Seikaly Parties had already offered to redact the social security numbers, the court denied the Credit Union's request to remove the roster entirely and simply redacted the Society Security numbers. (**Exhibit 3**, October 17, 2016 transcript, at 10-11, 14).

---

[1] The parties resolved the claims against Vasily Shibanov and Oksana Holyk through case evaluation. The Garaks defaulted but then filed for bankruptcy.

As for the management report, Judge Druzinski held that the Credit Union was entitled to no relief at all. (*Id.* at 17). Twice during the hearing, Judge Druzinski stated that she would not "get involved between any other claims that might be pending between" the Credit Union and the Seikaly Parties. (*Id.* at 13, 15). When the court turned to the Credit Union's request to remove the letter to the Credit Union Examiner, Seikaly stipulated that the Credit Union could redact any customer names that it wanted to remove. (*Id.* at 17).

Later that day, the Court entered a written order redacting the social security numbers from the roster, allowing the Credit Union to redact names from the letter, and denying the Credit Union's request for relief concerning the management report. (**Exhibit 4**, October 17, 2016 order).

### C. The Credit Union re-raises its allegations about "larceny."

The Credit Union filed two more motions about the documents at issue: a motion to disqualify the Seikaly Parties as counsel and a motion to compel Shibanov's deposition about the documents at issue. In support of its motion to disqualify, the Credit Union asserted (as it does here) that the Seikaly Parties violated the Identity Theft Protection Act, MCL 445.63, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. (**Exhibit 5**, October 31, 2016 transcript, at 6). It asked the court to order the Seikaly Parties to explain how they obtained the documents and to return them to the Credit Union. (*Id.* at 5-6).

At the October 31, 2016 hearing, William Seikaly took responsibility for filing the roster without redacting social security numbers and explained that he believed that information about the source of the documents at issue was privileged. (*Id.* at 7). The Credit Union responded with allegations of "larceny." (*Id.* at 8-9). Judge Druzinski told the Credit Union that the underlying action wasn't the place for its criminal allegations. (*Id.* at 9.) Ultimately, the court denied the motion to disqualify the Seikaly Parties and the motion to compel Shibanov's deposition. The Credit Union filed an interlocutory application for leave to appeal with the Michigan Court of Appeals, along with a motion for immediate consideration. *Ukranian* [sic] *Future Credit Union v Garak* (COA Case No. 335688). The Court of Appeals denied the application.

### D. The Credit Union seeks relief from the Michigan Court of Appeals.

In early November 2016, the Macomb County Circuit Court closed discovery. (**Exhibit 6,** November 7, 2016 Order Closing Discovery). A couple weeks later, the court entered an order granting Shibanov's motion for summary disposition and closing the case. (**Exhibit 7**, November 21, 2016 order). Shibanov's motion for case-evaluation sanctions remains pending, with an evidentiary hearing scheduled for July 21, 2017.

The Credit Union appealed the summary-disposition order to the Michigan Court of Appeals. Its brief on appeal asserts that Judge Druzinski should have

6

ordered the Seikaly Parties to return "private, confidential and other unidentified records illegally removed from [the Credit Union's] offices." (**Exhibit 8**, Credit Union's Appellee Brief (without exhibits), at *vi*). It argues that the Seikaly Parties had no "legal right to retain, refuse to identify and refuse to provide to [the Credit Union] private, confidential and other records illegally removed from the [Credit Union's] offices…" (*Id.*) And it asserts that the Seikaly Parties should have been disqualified for possessing these "private and confidential records[.]" (*Id.*)

The Credit Union asks the Michigan Court of Appeals to "order that all documents obtained by Defendants outside of the discovery process be identified and provided to [the Credit Union] forthwith," to disqualify the Seikaly Parties based on their possession of those documents, and to allow the Credit Union to depose Shibanov and Holyk. (*Id.* at 26).

## STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A plaintiff satisfies this standard of facial plausibility by "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556).

7

When reviewing a motion under Rule 12(b)(6), "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001). In addition, "'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Id.*

## ARGUMENT 1: COMPUTER FRAUD & ABUSE ACT

**The Computer Fraud & Abuse Act prohibits accessing a protected computer or computer network. The Credit Union claims that the Seikaly Parties have documents they shouldn't, but it doesn't allege facts suggesting that the Seikaly Parties actually accessed a protected computer or computer network. Therefore, the Credit Union's claim fails under Rule 12(b)(6).**

In Count I, the Credit Union alleges that the Seikaly Parties violated the Computer Fraud & Abuse Act, 18 U.S.C. 1030, by "access[ing the Credit Union's protected computer] knowingly and with the intent to defraud and illegally obtain private and confidential information…." (Complaint, Doc. 1, PgID 6, ¶ 20). This alleged access supposedly caused the Credit Union losses in excess of $5,000 in a one-year timeframe. (*Id.,* PgID 6, ¶ 21).

The Credit Union's allegations invoke 18 U.S.C. 1030(a)(4), which prohibits "access[ing] a protected computer without authorization, or exceed[ing] authorized

8

access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period….” 18 U.S.C. 1030(a)(4). Although the Credit Union is wrong to claim that the Seikaly Parties accessed its computer network, what's dispositive here is that the Credit Union's claim under the Computer Fraud & Abuse Act includes no supporting *factual* allegations.

The Credit Union's complaint alleges that the Seikaly Parties have documents the Credit Union didn't produce in state-court discovery. (Complaint, Doc. 1, PgID 3, ¶ 8). It asserts that none of those documents is relevant to the state-court litigation, claims that the Seikaly Parties "have no legal interest" in those documents, and contends that the Seikaly Parties must tell the Credit Union where they got those documents. (*Id.,* ¶¶ 11-12, 15-16).[2] Then Count I simply recites the elements of a claim under the Computer Fraud & Abuse Act. (*Id.*, PgID 6).

So the Credit Union claims that the Seikaly Parties accessed a computer or computer network illegally, but it doesn't provide a *single* factual allegation to support that claim. It doesn't say when or how the Seikaly Parties accessed its

---

[2] The Credit Union asserts that those documents weren't relevant in the state-court action. It made that relevancy argument to the state court when it asked the court to remove those documents from the record. (Ex. 3, October 17, 2016 transcript, at 13). The state court denied the Credit Union's request. (*Id.* at 17-18).

computers, it doesn't identify the computer or computer network at issue, and it isn't even able to identify the *documents* at issue. Under *Iqbal* and *Twombly*, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Hensley Manufacturing v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009). It must "allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level[.]" *Id.* (citations and internal quotations omitted).

No reasonable factfinder could conclude from the Credit Union's allegations that the Seikaly Parties "knowingly and with intent to defraud, *accesses[ed] a protected computer* without authorization[.]" 18 U.S.C. § 1030(a)(4) (emphasis added). The Credit Union has simply taken a state-court discovery dispute, added the elements of a federal statute, and asked this Court to take jurisdiction. Rule 12(b)(6) requires more. The Court should dismiss Count I.

## ARGUMENT 2: CONVERSION

**Conversion is the wrongful exercise of dominion over another's property. The Credit Union alleges that the Seikaly Parties converted the roster, a letter, a management report and other, unidentified documents. But it offers no factual allegations about where those documents came from. Therefore, the Credit Union hasn't alleged the factual basis for a conversion claim.**

In Count II, the Credit Union asserts that the Seikaly Parties have documents and records" belonging to the Credit Union that were "not produced in discovery in

10

the underlying state case. (Complaint, Doc. 1, PgID 7, ¶ 26). It alleges that the Seikaly Parties are liable for statutory and common-law conversion because they refused to return those documents. (*Id.*, PgID 8, ¶ 27).

Conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606 (Mich. 1992). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agric v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 244–45 (Mich. 2010).

The Credit Union claims that the Seikaly Parties converted the roster, letter, management report, and other, unidentified documents. The Credit Union doesn't know how the Seikaly Parties obtained those documents, and doesn't include any factual allegations on that issue. Indeed, the Credit Union doesn't even *identify* all of the allegedly converted property at issue. (Complaint, Doc. 1, PgID 8, ¶ 27). Consequently, the complaint doesn't allege a "distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co.*, 486 N.W.2d at 606).

Even if the Credit Union proved the allegations in its complaint, a factfinder couldn't find the Seikaly Parties liable for conversion; the allegations are just too vague under *Iqbal/Twombly*. *Hensley Manufacturing*, 579 F.3d at 609 (requiring a

11

plaintiff to allege facts that would support a right to relief). The Court should dismiss the Credit Union's conversion claim (Count II) for failure to state a claim.

### ARGUMENT 3: SOCIAL SECURITY NUMBER PRIVACY ACT

**Under Michigan's Social Security Number Privacy Act, "an individual" may pursue a claim based on misuse of a social security number. An "individual" means a single human being. Indeed, the Act's definition of "person" distinguishes "an individual" from companies, corporations, and other legal entities. Therefore, the Credit Union's claim is invalid.**

In Count III, the Credit Union asserts a claim under Michigan's Social Security Number Privacy Act, MCL 445.81, *et seq.* It claims that the Seikaly Parties "negligently" and "intentionally" violated this act "by admittedly releasing the social security numbers of Plaintiff's employees and board members for public display on at least two occasions." (Complaint, Doc. 1, PgID 8, ¶¶ 32-33). The Credit Union's claims fail because only an "individual" can pursue a claim for civil damages under the act. The Credit Union isn't an individual.

The Social Security Number Privacy Act prohibits the intentional use or public display of more than four sequential digits of social security numbers. MCL 445.83. A person who violates the act "with knowledge that the person's conduct violates this act" is guilty of a misdemeanor. MCL 445.86. In addition, "an individual" may pursue a civil action for a violation of the act:

(2) An *individual* may bring a civil action against a person who violates section 3 and may recover actual damages. If the person

12

knowingly violates section 3, *an individual* may recover actual damages or $1,000.00, whichever is greater. If the person knowingly violates section 3, *an individual* may also recover reasonable attorney fees. …. [MCL 445.86 (emphasis added)]

The Social Security Number Privacy Act doesn't define the term "individual." But the usual rules of statutory interpretation require application of the statute's plain language. *Ford Motor Company v. Ghreiwati Auto,* 945 F. Supp. 2d 851, 861 (E.D. Mich. 2013). When a statute doesn't define a term, both the Michigan Supreme Court and the Sixth Circuit Court of Appeals use dictionaries. *Brody v. Genpact Services, LLC,* 980 F. Supp. 2d 817, 820 (E.D. Mich. 2013) (citing Sixth Circuit case law); *City of Coldwater v. Consumers Energy Company,* 895 N.W.2d 154, 163 (Mich. 2017).

*Individual*, when used in this context as a noun, means ""a particular person." MERRIAM-WEBSTER'S ONLINE DICTIONARY, "individual."[3] So it refers to a single human being. Indeed, when the Michigan Legislature defined the term *person* in the Social Security Number Privacy Act, it distinguished between an "individual" and legal entities like companies and corporations:

> (e) "Person" means an individual, partnership, limited liability company, association, corporation, public or nonpublic elementary or secondary school, trade school, vocational school, community or junior college, college, university, state or local governmental agency or department, or other legal entity. (MCL 445.82(e)]

---

[3] *See* http://www.merriam-webster.com/dictionary (last visited July 13, 2017).

The Credit Union is not an "individual," as that term is used in the Social Security Number Privacy Act. Because the Act only allows an "individual" to pursue a civil action, the Credit Union's claim fails as a matter of law. *See* MCL 445.86.[4]

## ARGUMENT 4: IDENTITY THEFT PROTECTION ACT

**The Identity Theft Protection Act prohibits the use of another's personal identifying information for unlawful purposes. The Credit Union alleges that the Seikaly Parties obtained and possessed others' personal identifying information; that's not *using* other's personal identifying information within the intent of the statute. Moreover, the Credit Union lacks standing to pursue a claim based on third parties' personal information.**

Count IV alleges that the Seikaly Parties violated Michigan's Identity Theft Protection Act, MCL 445.61, *et seq*. This act prohibits the unlawful use of another's personal identifying information:

(1) A person shall not do any of the following:

(a) With intent to defraud or violate the law, use or attempt to use the personal identifying information of another person to do either of the following:

(*i*) Obtain credit, goods, services, money, property, a vital record, a confidential telephone record, medical records or information, or employment.

(*ii*) Commit another unlawful act…. [MCL 445.65].

---

[4] In addition, the Credit Union's claim under the Social Security Number Privacy Act is based on the accidental publication of *non-parties'* social security numbers. The Credit Union lacks standing to pursue a claim based on an alleged injury to third parties, as shown in Argument 4.2 below.

The Credit Union's claim under this statute fails as a matter of law for two reasons: (1) it hasn't pleaded the necessary elements, and (2) it lacks standing to pursue a claim based on non-parties' personal identifying information.

### 4.1     The Credit Union hasn't pleaded facts suggesting that the Seikaly Parties used personal identifying information to commit an "unlawful act."

According to the Credit Union, the Seikaly Parties "acted with intent to violate the law in obtaining the personal identifying information [referenced in the documents at issue] and in their attempts to commit other unlawful acts, … including the aforementioned multiple violations of the Social Security Number Privacy Act and other state and federal statutes referenced in this Complaint." (Complaint, Doc. 1, PgID 9, ¶ 37). The Credit Union adds that, in addition to "obtaining" the personal identifying information," the Seikaly Parties "did obtain and possess" personal identifying information "in the commission of and with the intent to commit other crimes," including the state and federal claims in the Credit Union's complaint. (*Id.*, ¶ 37).

The Credit Union's allegations are false. But even taking those allegations as true for purposes of Rule 12(b)(6), the Credit Union's theory doesn't fit the Identity Theft Protection Act. That act prohibits the *use* or *attempted use* of personal identifying information for illegal ends. MCL 445.65. The Credit Union

only alleges that the Seikaly Parties *obtained* and *possessed* personal identifying information. (Complaint, Doc. 1, PgID 9, ¶¶ 36-37).

Moreover, the Identity Theft Protection Act prohibits using or attempting to use personal identifying information *to commit an unlawful act*. MCL 445.65. The only unlawful acts cited in the Credit Union's complaint are its other claims. Those claims fail as a matter of law for the reasons stated in this brief—and that means the Credit Union's claim under the Identity Theft Protection Act fails, too.

### 4.2 Even if the Credit Union could state a valid claim under the Identity Theft Protection Act, it lacks standing to pursue a claim based on third parties' personal identifying information.

A party asserting a claim in federal court must satisfy both constitutional and prudential standing requirements. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007). To establish constitutional standing, a plaintiff must show that it "has suffered (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct' and that is (3) 'likely to be redressed by the requested relief.'" *Id.* at 349 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). These requirements are "the irreducible constitutional minimum of standing." *Prime Media,* 485 F.3d at 349 (quoting *Lujan,* 504 U.S. at 560).

Prudential standing is "a judicially created doctrine" that promotes "judicial self-governance." *Prime Media,* 485 F.3d at 349. The doctrine of prudential standing counsels against a federal court's assertion of jurisdiction in two cases:

(1) "when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens," and (2) where the plaintiff purports to "rest his claim to relief on the legal rights or **interests of third parties**." *Prime Media,* 485 F.3d at 349 (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church and State,* 454 U.S. 464, 475 (1973) (emphasis added)). By attempting to state a claim based on the supposed misuse of *others'* personal identifying information, the Credit Union is attempting to assert the "interests of third parties." *Prime Media,* 485 F.3d at 349. It therefore lacks standing to pursue this claim.

## ARGUMENT 5: CONSPIRACY

**Under Michigan law, a conspiracy claim requires a valid, underlying tort. As shown in this brief, the Credit Union has not pleaded a valid, underlying tort. Therefore, the Court should dismiss its conspiracy claim as well.**

The Credit Union alleges a conspiracy claim in Count V. To establish a civil conspiracy, a plaintiff must show "(1) a concerted action (2) by a combination of two or more persons (3) to accomplish an unlawful purpose (4) or a lawful purpose by unlawful means." *Mays v. Three Rivers Rubber Corp,* 352 N.W.2d 339, 341 (Mich. Ct. App. 1984). Michigan courts have long held that "the gravamen of the action is not the conspiracy but … the wrongful acts causing the damages." *Fenestra, Inc v. Gulf Am. Land Corp.,* 141 NW2d 36, 49 (Mich. 1966).

Consequently, a conspiracy "standing alone" is not actionable; a plaintiff alleging a conspiracy must establish a valid underlying tort. *Id.*

None of the Credit Union's claims is valid, as shown in this brief. Therefore, the Credit Union has not alleged a valid, underlying tort to support its conspiracy claim. The Court should therefore dismiss the Credit Union's complaint.

## ARGUMENT 6: ABUSE OF PROCESS

**To state an abuse-of-process claim, a plaintiff must allege something more than a desire to harass the plaintiff and harm its reputation. Here, the Credit Union alleges that the Seikaly Parties abused the discovery process in the state-court action to harass the Credit Union and harm its reputation. Accordingly, its abuse-of-process claim fails as a matter of law.**

In Count VI, the Credit Union seeks damages for abuse of process under Michigan law. It alleges that the Seikaly Parties "abused the civil investigatory and discovery process by using it for their own ulterior motive or purpose to cause fixation, trouble, embarrassment, damage to Plaintiff's professional reputation, and damage to Plaintiff's community reputation and as retaliation …" (Complaint, Doc. 1, PgID 11, ¶ 45). It cites the Seikaly Parties' possession of supposedly confidential documents as "corroborating acts[.]" (*Id.,* ¶ 46).

The Credit Union's abuse-of-process claim fails because it hasn't alleged the kind of "ulterior purpose" that supports an abuse-of-process claim under Michigan law. To establish abuse of process, "a plaintiff must plead and prove (1) an ulterior

purpose, and (2) an act in the use of process that is improper in the regular prosecution of the proceeding." *Bonner v. Chicago Title Ins. Co.,* 487 N.W.2d 807, 812 (1992). "A bad motive alone will not establish an abuse of process." *Id.* The offending party must be using "… a proper legal procedure for a purpose collateral to the intended use of that procedure. *Id.*

The "ulterior purpose alleged must be more than harassment, defamation, exposure to excessive litigation costs, or even coercion to discontinue business." *Early Detection Ctr., P.C. v. New York Life Ins. Co.,* 403 NW2d 830, 835 (Mich. Ct. App. 1986). *See also Dalley v. Dykema Gossett PLLC,* 788 N.W.2d 679, 695 (Mich. Ct. App. 2010). In *Early Detection,* for example, the plaintiff alleged that the defendants filed a baseless lawsuit "to intimidate [the plaintiff] and other physicians to keep them from filling out disability forms and to affect plaintiff's business." *Id.* at 835. The Michigan Court of Appeals held that the plaintiff failed to state an abuse-of-process claim. *Id.*

The Credit Union alleges the same ulterior motive that did *not* support an abuse-of-process claim in *Early Detection*—a desire to trouble the Credit Union and harm its reputation. (Complaint, Doc. 1, PgID 11, ¶ 45). That alleged "ulterior purpose" fails as a matter of law. Accordingly, the Court should dismiss the Credit Union's abuse-of-process claim.

## ARGUMENT 7: SUPPLEMENTAL JURISDICTION

**The Credit Union asserts federal jurisdiction based on a skeletal and fact-deficient claim under the Computer Fraud & Abuse Act. If the Court doesn't dismiss all of the Credit Union's state-law claims based on the arguments detailed above, it should decline to exercise supplemental jurisdiction over those claims after dismissing the Credit Union's only federal claim.**

A federal court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. …." 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction when it dismisses all of the claims within its original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). This decision is discretionary. *Widgren v. Maple Grove Twp.,* 429 F.3d 575, 586 (2005). But "the balance of considerations usually will point to dismissing the state law claims…." *Id.*

If any state-law claims remain after the Court dismisses the Credit Union's only federal claim, the Court should decline to exercise its supplemental jurisdiction. The primary reason is the Credit Union's forum-shopping. It obtained results in the Macomb County Circuit Court that it doesn't like, and it pleaded a skeletal, facially deficient claim under the Computer Fraud & Abuse Act solely to invoke this Court's jurisdiction.

## ARGUMENT 8: *COLORADO RIVER* ABSTENTION

**Under *Colorado River*, a federal court may abstain from exercising jurisdiction until parallel state-court proceedings have concluded. The Credit Union's state-court appeal is based on the same operative facts and seeks some of the same relief as the Credit Union's complaint in this case. If the Court doesn't dismiss the Credit Union's complaint under Rule 12(b)(6), it should stay this action until related state-court proceedings end.**

The Court should dismiss the Credit Union's complaint as set forth above. If any claims remain, however, the Court should stay these proceedings until the state-court proceedings have concluded.

In *Colorado River v. U.S.,* 424 U.S. 800 (1976), the Supreme Court held that a federal court may abstain from exercising jurisdiction "in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Taylor v. Campanelli,* 29 F. Supp. 3d 972, 976 (E.D. Mich. 2014) (quoting *Romine v. Compuserve Corp.,* 160 F.3d 337, 339 (6th Cir. 1998)). A concurrent state proceeding doesn't mean that a federal court *lacks* jurisdiction. *Taylor,* 29 F. Supp. 3d at 976. *Colorado River* abstention is a discretionary, prudential decision. *Romine,* 160 F.3d at 340-341. As *Taylor* puts it, "a federal court may defer to a parallel concurrent state court proceeding, when the decision to do so is 'based on wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Taylor,* 29 F. Supp. 3d at 972.

Courts considering whether to abstain under *Colorado River* often emphasize countervailing considerations, such as federal courts' "virtually unflagging obligation … to exercise jurisdiction[.]" *Taylor,* 29 F. Supp. 3d at 976 (quoting *Romine,* 160 F.3d at 339). Abstention "is the exception, not the rule[,]" *Taylor,* 29 F. Supp. 3d at 976, and it is appropriate only "in extraordinary and narrow circumstances." *Colorado River*, 424 U.S. at 813 (quoted in *Taylor*, 29 F. Supp. 3d at 976). Further, a court should abstain under *Colorado River* only when it "concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Memorial Hosp. v. Mercury Const. Co.,* 460 U.S. 1, 28 (1983).

The first step in assessing whether *Colorado River* abstention is appropriate is "find[ing] that the concurrent state and federal actions are parallel." *Taylor,* 29 F. Supp. 3d at 977 (quoting *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 31 (6th Cir. 1984)). The Court doesn't need to find "exact parallelism." *Taylor,* 29 F. Supp. 3d at 977. State and federal actions are parallel if they are "substantially similar." *Taylor,* 29 F. Supp. 3d at 977 (quoting *Romine,* 160 F.3d at 340).

Cases are "substantially similar 'where (1) the parties are substantially similar, and (2) [Plaintiff's] claims against [Defendants] are predicated on the same allegations as to the same material facts…'" *Taylor,* 29 F. Supp. 3d at 977. The parties "need not be identical," but "are considered 'substantially the same' for

*Colorado River* purposes" when they have "'nearly identical' interests[.]'" *Taylor,* 29 F. Supp. 3d at 977 (citing *Clark v. Lacy,* 376 F.3d 682, 686 (7th Cir. 2004)).

The parties in this case are substantially similar to the parties in *Ukrainian Future Credit Union v. Garak,* which is now in the Michigan Court of Appeals. The Credit Union is the plaintiff in both cases. Although the Seikaly Parties are not named parties in *Ukrainian Future Credit Union*, they represent one of the defendants and have "nearly identical interests" for purposes of this case.

In addition, the Credit Union's claims against the Seikaly Parties are "predicated on the same allegations as to the same material facts." *Cf. Taylor,* 29 F. Supp. 3d at 977. In both cases, the Credit Union alleges that Seikaly obtained its documents illegally and demands their return. True, it does so through different legal avenues, alleging new statutory and common-law claims in this case while seeking disqualification and discovery in the state action. But the material facts and the documents at issue are the same. The cases also have overlapping demands for relief. In both, the Credit Union seeks the identification and return of the same documents. Accordingly, this case and the state case are substantially similar.

If proceedings are parallel, a court must address the *Colorado River* factors to determine whether abstention is appropriate. These factors include:

(1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which

23

> jurisdiction was obtained; (5) whether the source of governing law is
> state or federal; (6) the adequacy of the state court action to protect
> the federal plaintiff's rights; (7) the relative progress of the state and
> federal proceedings; and (8) the presence or absence of concurrent
> jurisdiction."

*Taylor,* 29 F. Supp. 3d at 978. The *Colorado River* factors apply as follows:

1. The state court hasn't assumed jurisdiction over any particular property, although the Credit Union *is* asking the Michigan Court of Appeals to decide whether the Seikaly Parties should return the same documents;

2. A federal forum is no less convenient to the parties then a state forum;

3. Abstention will avoid piecemeal litigation, since the Credit Union's state appeal involves some of the allegations it raises here;

4. The Credit Union began asserting claims related to the documents in state court before filing this federal action.

5. The primary source of governing law is Michigan law. Although the Credit Union asserts a claim under the Computer Fraud & Abuse Act, 18 U.S.C. 1030, it simply recites the Act's elements without providing factual support;

6. The Credit Union hasn't raised the specific statutory and common law claims at issue in this case in a state-court complaint, but its filings in state court raise the same factual allegations;

7. The state-court litigation is in its appellate phase; this action has just started.

8. The Credit Union hasn't raised the same causes of action in state court, (though the factual allegations are the same), so concurrent jurisdiction isn't an issue.

Factors 6 and 8 arguably favor the exercise of federal jurisdiction. Factor 2 is

neutral. But the majority—factors 1, 3, 4, 5, and 7—favor abstention.

24

The Sixth Circuit has held that courts should generally stay rather than dismiss cases when *Colorado River* applies. *Bates v. Van Buren Twp.,* 122 Fed. Appx. 803, 809 (6th Cir. 2004). Therefore, the Seikaly Parties respectfully submit that the Court should abstain from hearing this proceeding until the state-court litigation is resolved.

## CONCLUSION

For the foregoing reasons, Seikaly and Seikaly, Stewart & Bennett, P.C. respectfully request that this Court enter an order (1) staying proceedings under *Colorado River,* (2) dismissing each count of the Credit Union's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and/or (3) declining to exercise supplemental jurisdiction over any state law claims remaining after the Court dismisses Count I.

Although the Seikaly Parties will file a separate response to the Credit Union's motion for a preliminary injunction (Doc. 7), the Court should also deny that motion based on the arguments stated in this brief.

<div style="margin-left: 40%;">

Collins Einhorn Farrell PC

By: */s/ Trent B. Collier*
Michael J. Sullivan (P35599)
Trent B. Collier (P66448)
Kellie Howard Goudy (P69009)
4000 Town Center, 9th Floor
Southfield, MI 48075 / (248) 355-4141
kellie.howard-goudy@ceflawyers.com
*Attorney for Defendants William Seikaly*
*and Seikaly, Stewart & Bennett, P.C.*

</div>

Dated: July 19, 2017