```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION
                              —   —   —
 3
      UKRAINIAN FUTURE CREDIT UNION,
 4
               Plaintiff,
 5
        vs.                              Case No. 17-11483
 6
      SEIKALY, et al.,                   Hon. Matthew F. Leitman
 7
               Defendants.
 8      _____/

 9                 MOTION FOR PRELIMINARY INJUNCTION

10            BEFORE THE HONORABLE MATTHEW F. LEITMAN
                     United States District Judge
11                         600 Church Street
                            Flint, Michigan
12                   Wednesday, September 6, 2017

13
      APPEARANCES:
14
       For the Plaintiff:      JAMES BIGELOW
15                             P.O. Box 7144
                               Sterling Heights, MI 48311
16                             (586) 530-7788

17     For the Defendants:     TRENT COLLIER
                               Collins, Einhorn, Farrell &
18                             Ulanoff, PC
                               4000 Town Center, Suite 909
19                             Southfield, MI 48075
                               (248) 355-4141
20

21

22

23

24       To obtain a copy of this official transcript, contact:
              Robert L. Smith, Official Court Reporter
25           (313) 964-3303 • rob_smith@mied.uscourts.gov
```

TABLE OF CONTENTS

MATTER                                              PAGE

Motion........................................... 4

Response.........................................23

Reply............................................31

Ruling by the Court..............................43

Motion for Preliminary Injunction • September 6, 2017

1    Flint, Michigan

2    Wednesday, September 6, 2017

3    at about 9:05 a.m.

4                          —   —   —

5              (Court and Counsel present.)

6              THE CASE MANAGER:  All rise.

7              The United States District Court for the Eastern

8    District of Michigan is now in session, the Honorable

9    Matthew F. Leitman, United States District Judge, presiding.

10             You may be seated.

11             The Court calls Case No. 17-11483, Ukrainian Future

12   Credit Union vs. Seikaly, et al.

13             Counsel, please state your appearances for the

14   record.

15             MR. BIGELOW:  Good morning, Your Honor.  For the

16   record, James Bigelow appearing on behalf of plaintiff.

17             THE COURT:  Good morning.

18             MR. COLLIER:  Your Honor, my name is Trent Collier,

19   and I represent William Seikaly and the law firm of Seikaly,

20   Stewart & Bennett.

21             THE COURT:  Good morning.  Welcome to both of you.

22   Please be seated.

23             MR. COLLIER:  Thank you.

24             THE COURT:  First of all, let me thank you for

25   making the effort to join me up here in Flint.  I don't know

1    if I moved up here before or after this case was filed, but I

2    always appreciate it when folks take the effort to join me up

3    here.

4              We are here this morning for argument on the motion

5    for preliminary injunction that Mr. Bigelow filed.

6    Mr. Bigelow the floor is yours.  I ask only that you come to

7    the podium and speak clearly, please.

8              MR. BIGELOW:  Thank you, Your Honor.

9              Your Honor, I know you have had an opportunity to

10   review the briefs.  I will just make a few brief --

11             THE COURT:  Can you pull that microphone down just

12   a little bit?  The acoustics in here are not great.

13             MR. BIGELOW:  Better?

14             THE COURT:  Please, yes.

15             MR. BIGELOW:  Your Honor, the first point I would

16   make in regards to the plaintiff's motion is that the

17   defendants aren't going to be prejudiced at all in this case.

18   They have indicated that, well, there is an appeal pending

19   and they need these documents for the appeal.  The three

20   documents --

21             THE COURT:  Let me go kind of in order on the

22   injunction factors and start with the merits, if I might,

23   Mr. Bigelow.

24             With respect to the federal claim, what section of

25   the Federal Computer Fraud and Abuse Act are you bringing

1    your claim under?  Is it more than one section or is it a

2    single section?

3            MR. BIGELOW:  I don't have the section handy,

4    Your Honor, but I would indicate that pursuant to the

5    Furukawa case we are not claiming that there was unauthorized

6    access.  We are claiming that there was authorized access

7    beyond the scope of what the defendant was permitted to do.

8            THE COURT:  All right.  In the Furukawa case I'm

9    holding up, just so you can see it, the authorities that you

10   presented, and you attached a copy of the Furukawa case and

11   you -- and I appreciate -- highlighted for me the section

12   that you wanted me to read.

13           MR. BIGELOW:  Yes.

14           THE COURT:  In the Furukawa case, Judge Drain, my

15   colleague, was discussing two separate subsections of the

16   Computer Fraud and Abuse Act, subsection (a)(2) and (a)(4),

17   and you highlighted in here -- again I'm holding it up --

18   only his discussion of the elements of subsection (a)(4).

19           Am I to assume then that that's the subsection that

20   you want me to read?

21           MR. BIGELOW:  I'm not sure that (a)(4) is -- which

22   section that is, Your Honor.

23           THE COURT:  All right.  The -- I'm going to read

24   you the part that you highlighted for me so we can all be on

25   the same page here.

Case 2:17-cv-11483-MFL-SDD  ECF No. 23  filed 09/12/17  PageID.549  Page 6 of 59
Motion for Preliminary Injunction • September 6, 2017

6

1          MR. BIGELOW:  Okay.

2          THE COURT:  You highlighted for me the following

3     from page 871 of Judge Drain's decision in the American

4     Furukawa case.  For the record the citation is 103 F. Supp.

5     3rd, 864, Eastern District of Michigan, 2015.

6          You highlighted for me the following text, quote,

7     to successfully bring an action under the CFAA based on a

8     violation of subsection (a)(4), Furukawa must show that

9     Hossein, one, accessed a protected computer; two, without

10    authorization or exceeding such authorization that was

11    granted; three, knowingly and with intent to defraud; and

12    thereby, four, furthered the intended fraud and obtained

13    anything of value, causing; five, a loss to one or more

14    persons during any one-year period aggregating at least

15    $5,000 in value.

16         Are those the elements that you are trying to

17    satisfy in your complaint and your motion?

18         MR. BIGELOW:  Yes, Your Honor.  As well as the

19    other 18 U.S.C. Section 2113, the -- which is set forth in --

20    those issues are set forth in my reply brief.

21         That section was highlighted, Your Honor, in

22    regards to the initial complaint that was filed.  The

23    complaint has since been amended, and there are additional

24    claims and additional parties, and we have come upon

25    additional facts that have been set forth in there regarding

1   the actual downloading of the information by Ms. Shibanov.

2           THE COURT:  Let me take the subsection (a)(4) of

3   the CFAA claim, if we could, talk about that for a moment.

4           MR. BIGELOW:  Okay.

5           THE COURT:  One of the elements that Judge Drain, I

6   just -- that Judge Drain mentioned and that you just

7   confirmed for me is at issue here is an element that the

8   defendant act knowingly and with an intent to defraud and

9   that their actions of accessing the computer under this

10  subsection further the intended fraud.

11          What here is the theory of a fraud as opposed to

12  just accessing private information for some non-fraudulent

13  purpose?

14          MR. BIGELOW:  Well, basically, Your Honor, the gist

15  of my argument would be that it is illegal conduct.

16  Mr. Seikaly is not supposed to have possession of these

17  documents.  They are protected by state law.

18          THE COURT:  But he's not alleged to have accessed

19  the computer.  As I understand the affidavit you've submitted

20  along with the first amended complaint, the allegation is

21  that Ms. Shibanov -- am I saying that correctly --

22          MR. BIGELOW:  Ms. Shibanov.

23          THE COURT:  -- Ms. Shibanov accessed the computer;

24  is that correct?

25          MR. BIGELOW:  That's the way it appears,

1    Your Honor.  We don't know if Mr. Seikaly was able -- if she

2    was able to get access again.  We don't think she did beyond

3    February or March of 2013.

4         THE COURT:  Well, assume for the sake of my

5    question and just as a hypothetical assumption that you have

6    persuaded me that she accessed the computer remotely as your

7    affidavit says.  What is the evidence that, if she accessed

8    in that way, she did it with an intent to defraud your client

9    as opposed to some other intent?

10        MR. BIGELOW:  Well, if you take a look at the

11   amended complaint, Your Honor, as well as the reply brief,

12   she kept the documents.  When she was working remotely from

13   Oregon, she was supposed to compile information, modify

14   documents is my understanding, send them back to the credit

15   union.  She apparently kept them, and it involves hundreds of

16   customers, as far as we know based on the affidavit of

17   Ms. Brown, it involves other documents which were utilized in

18   the state court case which are protected by both state and

19   federal law.

20        THE COURT:  All right.  But, again, I'm focusing --

21   the one element that I wanted to focus on when I read these

22   elements here is, assume for the sake of my question that

23   Ms. Shibanov -- you say she was in Oregon?

24        MR. BIGELOW:  Yes, she was.

25        THE COURT:  Assume that I am with you that she

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.552   Page 9 of 59
Motion for Preliminary Injunction • September 6, 2017

9

1    accessed the computer remotely, assume I'm willing to take

2    the next step with you that she kept documents that she

3    downloaded, assume the next step, that in the litigation in

4    the state court she used those documents in an effort to

5    prove her claim or, excuse me, to support her defense or for

6    some other purpose.  Where is the intent to defraud?

7         When I think of an intent to defraud, maybe I'm

8    being too simpleminded about it, I think about somebody

9    trying to steal something of value from somebody or cheat

10   somebody out of something of value.  Even if Ms. Shibanov did

11   exactly what you are suggesting she did, how could I find at

12   this point that she acted with an intent to defraud?

13        MR. BIGELOW:  Well, in this case, Your Honor, she

14   did sign several agreements with the credit union indicating

15   that those e-mails are the property of the credit union, they

16   are not hers.  She kept them, she kept all of the information

17   and all of the attachments related to the customers, the

18   members, the board members as well, and all of the regulatory

19   documents.  It appears as well she was basically preparing

20   monthly and quarterly reports, I think for several months

21   after she left, so she had a contractual obligation not to do

22   what she did.

23        THE COURT:  All right.  But a contractual

24   obligation, breaching a contract isn't evidence of an intent

25   to defraud.  There are all sorts of contractual breaches that

1    aren't fraudulent, right?

2            MR. BIGELOW:  Yes, I would --

3            THE COURT:  Of course there are.  Of course there

4    are.

5            I could think of circumstances under which somebody

6    in Ms. Shibanov's position might take documents from an

7    employer that don't belong to the person in Ms. Shibanov's

8    position and keep those documents but not do it with an

9    intent to defraud, and let me give you an example.

10           For instance, a whistleblower might take the

11   employer's documents and hold them to have evidence of

12   wrongdoing.  I'm not suggesting for a moment that

13   Ms. Shibanov is a whistleblower, I have no idea.  But what

14   I'm trying to get at, Mr. Bigelow is, even accepting that

15   Ms. Shibanov had the credit union's documents, what is the

16   additional evidence that would allow me to conclude that she

17   had them with an intent to defraud?  That's still what I'm

18   wrestling with.

19           MR. BIGELOW:  Yeah, and I understand that,

20   Your Honor, and I would think perhaps through discovery we

21   may learn that for the purposes of a preliminary injunction

22   motion, I think, and there is a jury demand in this case.  I

23   think that's an issue of fact.

24           THE COURT:  All right.  Look, come, on.  Let's

25   focus in here.  At the preliminary injunction stage, it

1    certainly isn't enough to warrant injunctive relief to say

2    that, on one of the elements of the claim, I don't have

3    evidence today but I might get it in discovery.  Today you

4    would need to show a likelihood of success on the merits as

5    one of the factors here.

6        And what I'm trying to press on here is that

7    without -- if your claim is under subsection (a)(4), as you

8    have indicated it is, without evidence of an intent to

9    defraud, how could I find a likelihood of success on that

10   claim when I'm looking at that element of the test?  That's

11   really what I'm focused on.

12       MR. BIGELOW:  Yeah, and I understand your point,

13   Your Honor, there is some uncertainty there, but we are

14   talking about highly confidential information that she had.

15       THE COURT:  Okay.  Let me move to the point that I

16   think that you were opening with, which is this concept of

17   harm.  Maybe you weren't opening with that, but that's what I

18   want to talk about.

19       You know, the most important element of this

20   injunctive relief test is this notion of irreparable harm.

21   When I think about the circumstances of this case and the

22   relief that you've asked for, the first thing I think about

23   is the background of what happened in the Macomb County

24   Circuit Court case and more specifically what the

25   Macomb County Circuit Court's publicly available files look

1    like as we all stand here this morning. And it occurs to me

2    that if at the conclusion of this hearing I was curious, I

3    could drive to the Macomb County Circuit Court and present

4    myself at the clerk's office and say, may I please see the

5    file in the underlying state court case, and I could look at

6    the documents that are in question here because, while

7    Judge Druzinski ordered them redacted she did not order them

8    removed from the files; is that correct?

9            MR. BIGELOW: You could do that I believe.

10           THE COURT: So if I granted you all of the relief

11   that you want today, ordered the Seikaly firm to give you

12   back every copy they have of that document, to purge it from

13   their computer system, all the stuff you've asked for, the

14   primary harm to your client, it seems to me, which is the

15   public having access to the documents, at least in a redacted

16   form, would still be there; isn't that correct?

17           MR. BIGELOW: The files are still there,

18   Your Honor, and that was the first point I was going to make.

19   You know, those three documents which were utilized, they are

20   part of the record and they are going up to the Court of

21   Appeals. My client's big concern is, all of these other

22   documents that Ms. Brown attested to in her two declarations,

23   we don't even know what they are, and Mr. Seikaly admitted on

24   the record that he had a lot of other documents. If we look

25   at a lot of the documents that Ms. Shibanov --

1      THE COURT:  Where did he admit on the record that

2  he had a lot of other documents?

3      MR. BIGELOW:  He admitted that he had other

4  documents.

5      THE COURT:  Where -- can you point me to the

6  specifics?  I read the transcripts this morning, and I want

7  to be sure that I'm --

8      MR. BIGELOW:  I believe it may be Exhibit 5, and

9  Mr. Seikaly has repeatedly indicated that he would like to

10  have an in-camera hearing.  I believe it is page 8.  Let's

11  see.  But it has been set forth in pleadings, Your Honor, I

12  would submit that to the Court.  If you look at top of

13  page 8, he's requesting an in-camera review.

14      THE COURT:  No, no, what he says there on the top

15  of page 8, and you highlighted it for me is, if the Court

16  wishes to examine me in camera.  He's not -- he's not

17  suggesting -- at least I didn't see it, and it would be

18  helpful for me if you could direct me to it -- that he's

19  sitting on some substantial amount of other documents that

20  are unidentified.  If that's in this record it would be

21  helpful if you could show me.

22      MR. BIGELOW:  Yeah, I am not sure it is in this

23  transcript, Your Honor.  I know it is in one of the

24  deposition transcripts which I could submit to the Court if

25  you wanted to permit me to do that.

Motion for Preliminary Injunction • September 6, 2017

14

1     But he did indicate, when he first utilized the

2 document in the deposition of the chief executive officer,

3 that he had other documents and that he obtained them outside

4 of discovery.

5     THE COURT:  Mr. Collier's primary point on the

6 irreparable harm argument is that if his client is -- has a

7 file folder sitting in his office, if Mr. Seikaly has that

8 and it contains these documents and the documents are simply

9 sitting there, what is the irreparable harm to your client of

10 the documents sitting there?  As I understand the documents,

11 it is not as if Mr. Seikaly has the only copy of these

12 documents.  The documents would be electronically available

13 to your clients, so they are not deprived of the use of the

14 documents.  The documents aren't a trade secret, he's not

15 threatening to use them competitively against your client.

16 They are simply sitting in the file at this point as the

17 appeal makes its way through the state court system; is that

18 correct?

19     MR. BIGELOW:  Well, as to the three documents that

20 he utilized.  But, Your Honor, he's indicated he has other

21 documents.  We don't know what they are.

22     THE COURT:  All right.  But let's assume for the

23 sake of this discussion -- and I'm only making it as an

24 assumption because, as I indicated, I hadn't yet seen

25 evidence of that -- by assume that I agree with you that he

Motion for Preliminary Injunction • September 6, 2017

**15**

1   has a file, an additional file of documents, and sitting on

2   his -- pretend you and I are in his office and he has a file

3   labeled the documents we all illegally stole from the

4   Ukrainian credit union and got away with it, and, you know,

5   some ridiculous title, and it is just sitting there on his

6   shelf.  What's the irreparable harm to your client if the

7   documents are just sitting there?

8           MR. BIGELOW:  Well, they are still private and

9   confidential records that he's not entitled to keep.

10          THE COURT:  I understand that, but irreparable harm

11  is harm that couldn't be remedied at some point with a dollar

12  award or some point down the road.  If the documents are just

13  sitting there, what is the need for this extraordinary

14  preliminary injunction relief?

15          MR. BIGELOW:  Well, Your Honor, first of all,

16  you know, one of the documents contains social security

17  numbers.  We know they were released to the general public.

18  And there are these other documents, we just don't know what

19  they are, and basically the documents are being held hostage,

20  I think is one way of putting it.

21          THE COURT:  Isn't that not an accurate way of

22  putting it?  When you hold something hostage, the idea is the

23  person needs to get the hostage back in exchange for

24  something.  If I understand the state of the world, the

25  documents are simply sitting on Mr. Seikaly's credenza,

1   nobody is demanding anything in exchange for the documents,

2   they are just -- if they are there, they are just sitting

3   there, right?

4        MR. BIGELOW:  But the catch is, Your Honor, they

5   would certainly be used in part of a settlement negotiation

6   regarding the state court case and, it appears, this case as

7   well.

8        THE COURT:  Didn't the Seikaly parties win in the

9   state court?

10       MR. BIGELOW:  Yes, they did, and the Court closed

11  discovery because I indicated to the Court that we needed

12  these documents back, the unknown documents, and that's when

13  we filed our application for leave to the Court of Appeals,

14  the Court then dismissed the case on summary judgment.  Not

15  as a discovery sanction.  I think it was actually -- I think

16  that was the Court's intent that it actually was a discovery

17  sanction because -- and there are other issues that I have

18  outlined in my brief regarding what my client felt was unfair

19  regarding the conducting of the deposition of the CEO.

20       THE COURT:  Mr. Bigelow, this -- your papers have a

21  feel to them as if you are asking me to undo what you regard

22  as a whole series of errors made by the state system here,

23  your -- you believe and in good faith that Judge Druzinski

24  made a grievous error here in the way she handled this stuff,

25  you believe the Michigan Court of Appeals blew it, you

1    believe the Michigan Grievance Commission blew it, and

2    Mr. Collier says that the Rooker-Feldman doctrine doesn't

3    technically apply here because you are not technically asking

4    me to review the state system, but it certainly has that feel

5    that you're here because the state court, in your view,

6    didn't do the right thing.  Is that an unfair view of this

7    case?

8         MR. BIGELOW:  Yes, I think so, Judge.  I think it's

9    unfair because we were asking the Court to take a look at the

10   ethical rules, the court rules, and to return the documents.

11        Here, it is a violation of federal law quite

12   clearly for Mr. Seikaly and his firm to possess the

13   documents, and that's why we are here before this Court.  We

14   took these other avenues, and I know there is a laches claim

15   as well, but that fails because there is no prejudice in this

16   regard.  The defendants have been able to keep the documents,

17   they have been able to utilize the ones they want in the

18   state court litigation.  These are federally protected

19   documents, they are also protected by state law, and the fact

20   that we moved in two courts to get the records back under

21   ethical rules and under the Michigan Court Rules is a much

22   different situation than coming before this Court and

23   indicating that, hey, these documents are federally protected

24   and we should be able to get them back.

25        THE COURT:  What if, to resolve this motion, the

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.561   Page 18 of 59
Motion for Preliminary Injunction • September 6, 2017

18

1    Seikaly parties agreed to an order that said until further

2    order of the court, we will keep these documents in a secure

3    file in our office and not disseminate them to anybody else,

4    wouldn't that preclude the risk of harm?

5          MR. BIGELOW:  Well, I think we -- as we saw, the

6    documents were misused in the state court.  The trouble with

7    an order of that breadth is we still don't know what they

8    have, we don't have the documents back, we don't have any

9    copies, we don't know what they are.  And, you know, federal

10   law precludes them from having them.  We should get these

11   documents back.  He's already had the benefit of utilizing

12   the three documents that he wanted to use in the state court

13   case.  He can't use all of these unidentified documents.

14         THE COURT:  You talk about using the documents.

15   The state court case is over and -- at the trial court level,

16   it is now before the Court of Appeals.  The rules of state

17   appellate procedure are like those of federal in that you

18   can't just generally expand the record, so the idea of

19   Mr. Seikaly making some unfair use of whatever documents he

20   may have in the state court litigation strikes me as highly

21   unlikely.  Do you disagree?

22         MR. BIGELOW:  I -- at this point do I think he will

23   utilize them?  Prob -- I don't know.  I don't know what he

24   has in mind.  We don't know because we don't know what these

25   documents are, Judge, and that's the big problem.  We

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.562   Page 19 of 59
Motion for Preliminary Injunction • September 6, 2017

19

1   can't --

2         THE COURT:  But what about an order signed by me,

3   if they would agree to it, that says that if and to the

4   extent Seikaly's firm is in possession of documents that

5   Ms. Shibanov downloaded in the manner described in your

6   complaint, if and to the extent they are in possession of

7   those documents, they shall maintain those documents in a

8   secure drawer and not use them for any purpose absent further

9   permission from this Court.  Wouldn't that at least put --

10  secure the interests of your client and let us sort through

11  what the facts may show here?

12        MR. BIGELOW:  I don't think so, Your Honor.  I

13  think we should be holding the documents and --

14        THE COURT:  What's -- what is -- why would you

15  perceive that -- I understand where you want to end up in

16  this case, but why would what I'm proposing not be enough to

17  protect your client?  If I issue that order and if we learn

18  that Mr. Seikaly or his firm knowingly violated that order,

19  they could be held in criminal contempt.  That seems to me to

20  be a pretty serious deterrent.

21        MR. BIGELOW:  I think the more efficient ruling

22  would be to give the documents back to my client.

23        THE COURT:  Look, I understand that.  My question

24  is a very specific one.  I totally get what you want.  My

25  question is, if I were to do what I just proposed, why is

1  that not enough to protect your clients?

2      MR. BIGELOW:  I think there is an issue of trust

3  here, Your Honor.

4      THE COURT:  Look, the point is, I am not asking

5  anybody to trust.  What I'm saying is I would sign an order

6  of a United States District Court.  This is the hypothetical

7  I'm giving you.  This is not trust, this is a coercive

8  federal court order that says you are going to do what I am

9  ordering you to do, which is keep the documents in a secure

10  file, as an order of the Court.  That's not the old

11  Ronald Reagan trust but verify, that's saying if you don't do

12  it there are people who can enforce federal court orders.  So

13  again I'm trying to focus on, what is not enough protection

14  if I were to enter that kind of an order?

15      MR. BIGELOW:  I just think it provides more

16  certainty that the documents will not be misused.

17      THE COURT:  Okay.  Anything else?

18      MR. BIGELOW:  Uh --

19      THE COURT:  Let me jump in here.  My style in oral

20  argument is I ask a lot of questions and I interrupt a lot

21  because if I don't ask the question right away I tend to

22  forget it.  What I always like to do at the end is to make

23  sure that I give counsel a chance to kind of take a look at

24  their notes and make sure if there are any points that you

25  want to make that I got in your way of making, please take a

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.564   Page 21 of 59
Motion for Preliminary Injunction • September 6, 2017

21

1    moment and share them with me.

2              MR. BIGELOW:  I appreciate it.  I appreciate that,

3    Your Honor.  I have enjoyed the dialogue.

4              I think I have -- I would just make one more point,

5    Your Honor, as far as, I don't think there is any adequate

6    remedy at law.  I think the Court should order that the

7    documents be returned so my client can adequately protect

8    their board members' privacy interests as well as their

9    customers.

10             THE COURT:  Let me just -- in subsection (a)(4) of

11   the Computer Fraud and Abuse Act, it refers to the defendant

12   obtaining anything of value.  The three documents that were

13   part of the state court record that you claim were obtained

14   from the credit union, help me understand what is the value

15   of those things.  In other words, it seems to me kind of a

16   classic Computer Fraud and Abuse Act claim is maybe the theft

17   of a trade secret from a computer, and then we know that that

18   has value.

19             But at least the documents we know of here are,

20   you know, rosters of folks at the credit union.  And I

21   completely understand your point and respect it that your

22   people don't want that out in the public.  I sure wouldn't.

23   So I totally understand and respect that point.

24             But how does -- how could I determine that there is

25   a value, a monetary value to that, that would be at least

1    $5,000 of what was stolen?  In the affidavit that you

2    submitted the $5,000 refers to legal fees that were paid to

3    you.

4              MR. BIGELOW:  Yes.

5              THE COURT:  I don't necessarily see that as what

6    the statute is talking about.  It talks about the thing

7    obtained having a value.

8              MR. BIGELOW:  Well, let's use the example of the

9    social security numbers themselves, Your Honor.  Certainly it

10   would be easy enough for someone to obtain a social security

11   number, utilize it in credit card fraud or loan fraud, and

12   obtain $5,000.

13             THE COURT:  So I guess the idea here is that, at

14   least in theory, if Mr. Seikaly were a thief he could sell

15   the social security numbers on some black market for at least

16   $5,000?

17             MR. BIGELOW:  And the other customer information,

18   you know, regarding loans, and -- for example, I think

19   there's mortgage information in there regarding if a

20   five-year balloon is due perhaps that could be used to

21   solicit that customer when their loan is coming due,

22   something along those lines.

23             THE COURT:  Okay.  Thank you again.  Anything else,

24   Mr. Bigelow, that you'd care to share?

25             MR. BIGELOW:  Nothing further, Your Honor.

Motion for Preliminary Injunction • September 6, 2017

1        THE COURT:  Thank you.

2        MR. COLLIER:  Good morning, Your Honor.  Again for

3   the record, my name is Trent Collier.

4        There are a few points I would like to make, but I

5   suspect I should jump to the key point, which is your

6   question about the order and whether it would solve things to

7   have an order that requires my client to keep these documents

8   in a secure drawer.

9        I think that makes perfect sense subject to two

10  caveats we would like to see in that order.  One is that the

11  three documents that were part of the state court trial

12  record can still be used in their redacted form in further

13  state court proceedings.  And the other would be that my

14  clients can share documents that they have with their

15  counsel.  In the event we get past the 12(b)(6) stage, the

16  plaintiff is going to be asking for copies of those documents

17  and to know what those documents are, and we are going to

18  have to see them.

19       So we would agree to an order that requires my

20  client to keep them in a secure drawer or place of some

21  fashion subject to our right to use the state court documents

22  and counsel's right to see those documents.

23       Subject to that, there are just a few points I

24  would like to make.  There is sort of a shifting procedural

25  posture here.  When the motion for an injunction was filed,

1    it was based on the complaints that alleged that Mr. Seikaly

2    and his law firm hacked the computers of the credit union.

3    That's what the complaint said and that's what the motion

4    said.  We responded to those allegations.

5            Later they filed a new complaint which shows that

6    those allegations are completely false.  They do not allege

7    any more that Mr. Seikaly or his firm was involved in hacking

8    any computers.  They don't allege that my clients violated

9    the Computer Fraud and Abuse Act.  And I think Count 1 of the

10   first amended complaint is addressed only at Ms. Shibanov.

11           So I think that's a problem for the motion as a

12   whole because the motion is directed only to Mr. Seikaly and

13   his law firm and we now know that all of the allegations that

14   were stated in the motion are false.  So there is no way that

15   the plaintiffs can establish a likelihood of prevailing on

16   the merits of the complaint that this is based on and the

17   motion and the facts alleged in their brief.

18           Second, I just want to respond, I think at one

19   point Mr. Bigelow might have suggested that we would try to

20   use these documents as leverage in settlement talks, and

21   that's just completely false.  We have never done that and we

22   wouldn't do that.

23           Lastly I just want to end with sort of a global

24   point that didn't come out in the briefs, but I think it is

25   important to understand the context of this case.

1        Mr. Seikaly has a duty under Michigan Rule of

2   Professional Conduct 1.6 to maintain the confidences and

3   secrets of his clients, and that extends beyond privilege, it

4   extends beyond work product.  He has a duty to maintain those

5   confidences.  So the allegation that he's somehow violating

6   his ethical duties is false.  In fact, he's fulfilling those

7   duties as best he can.

8        Unless the Court has questions for me, I can yield

9   my time.

10       THE COURT:  Yeah, just on a kind of a basic

11   commonsense proposition.  Mr. Bigelow has presented a picture

12   here that what happened is Ms. Shibanov stole his client's

13   stuff and gave it to Mr. Seikaly.  There is -- I haven't seen

14   any counterevidence -- and perhaps because you were

15   responding to the first version of the complaint and the

16   first motion -- that that's not what happened.

17       If that happened why isn't the -- if somebody stole

18   my stuff I would want it back.  Why isn't the right ruling

19   just, you know, boy, I didn't even have to go to law school

20   to figure this one out.  When my kids stole something from

21   the neighbor, I didn't ask about irreparable harm of the kid

22   keeping it overnight, I just said give the dang thing back.

23   Why isn't that the right thing here?

24       MR. COLLIER:  Well, I mean, it is kind of getting

25   ahead because we haven't had the chance to prove this and

1  plead this, but I think what we are going to show is that --

2  well, first of all, when you look at the new complaint that

3  was filed, they allege that Ms. Shibanov -- I keep saying

4  that wrong -- accessed these files in January of 2013 and

5  then Mr. Bigelow used them in 2015.

6          THE COURT:  Mr. Seikaly?

7          MR. COLLIER:  I'm sorry, Seikaly, yes.  He used

8  them two years later.  So they don't have a claim against

9  Mr. Seikaly under the Computer Fraud Act, which is only

10 federal claim here, so they've got to rope him in through

11 some sort of conspiracy.  And there is this huge factual gap

12 in their complaint because they have got her accessing these

13 documents while she was employed by the plaintiff and then

14 two years later, according to their complaint, she gave them

15 to her counsel and they were used in the state court.  So for

16 12(b)(6) purposes that is the big problem here is this huge

17 factual gap which they don't fill and they can't fill.

18         If I may, but I think -- and I'm getting ahead of

19 myself because I haven't reviewed all of these documents, but

20 what I understand to be the case and what I think we will

21 show is that Ms. Shibanov accessed these documents as an

22 employee and e-mailed them to herself so she could work at

23 home and sent them back to the credit union.  She was doing

24 nothing improper.  So she had these documents later, but she

25 didn't obtain them through any improper means.  She was

1    employed by the credit union.

2         THE COURT:  So your -- the theory you anticipate

3    offering is that this wasn't exceeding the permitted access?

4         MR. COLLIER:  Exactly.  And I'm getting ahead of

5    myself because we haven't had a chance to look at all the

6    documents, but based on what I know now that is going to be

7    our theory.

8         But really that's a theory for the plaintiff -- I'm

9    sorry, not for the Plaintiff -- that's a theory for

10   Ms. Shibanov, who hasn't appeared in this case yet, and the

11   only allegations here concern my client.  So I don't think my

12   client needs to prove that he didn't -- or that she didn't

13   access those -- that she accessed those documents improperly.

14   That's for her to prove.

15        THE COURT:  What about the -- well, one of the

16   claims is a conversion claim.  Isn't -- doesn't the -- and it

17   is a statutory and common law conversion, and it has been a

18   while since I've looked at statutory conversion, but my

19   recollection is that the Michigan conversion statute has two

20   theories of conversion.  One, it now, by way of a fairly

21   recent amendment or maybe the past five or ten years,

22   includes common law conversion, but it previously included

23   and continues to cover the person who acts as the fence, the

24   person who receives converted property.  So isn't there a

25   claim against Mr. Seikaly for at least the statutory

Case 2:17-cv-11483-MFL-SDD ECF No. 23 filed 09/12/17 PageID.571 Page 28 of 59
Motion for Preliminary Injunction • September 6, 2017

28

1    conversion?

2         MR. COLLIER:  I don't think there is because it

3    would have to be under the new -- I guess it would be the old

4    section for aiding conversion.  I think that's going to

5    require proof beyond the fact that he got these documents

6    from his client two years after she got them.  He wasn't

7    involved in her allegedly wrongful conduct.

8         THE COURT:  My understanding of this, what I call

9    the old statutory conversion, and I may be wrong -- this is

10   how my dad explained it to me years ago, and he was a lawyer

11   but maybe not a conversion expert -- is that the old version

12   of the conversion statute was targeted at the person that we

13   commonly refer to as the fence, not somebody who did the

14   theft, not somebody who aided and abetted the theft, but

15   somebody who, knowing the theft had happened, received the

16   stolen or converted property.

17        So isn't there at least, even if everything you say

18   about the plaintiff's claim is that Shibanov did the

19   stealing, wouldn't there still conceivably be a claim against

20   Seikaly and his firm?

21        MR. COLLIER:  I don't think so for two reasons.

22   The first is, as the Court said, you have to know that the

23   documents have been stolen, and if she obtained these

24   documents in the course of her employment and gave them to

25   her counsel, he did not know that they were stolen because

1    they weren't.

2            The other problem, and this is sort of

3    foreshadowing our new 12(b)(6) motion, is I don't know if

4    Michigan law recognizes conversion based on electronic data,

5    so there's an Erie (phonetic) problem here.

6            Now, Judge Drain's opinion in the Furukawa case

7    does recognize that claim, but it didn't get into this Erie

8    question of whether or not state law even recognizes this

9    claim.  I'm still in the middle of doing research, but what I

10   found so far is that New York and California have recognized

11   claims based on electronic data, but a lot of other

12   jurisdictions haven't.

13           THE COURT:  Oh, say that conversion is somehow

14   limited to something that's --

15           MR. COLLIER:  That it has to be -- and again I'm

16   still in the midst of drafting a 12(b)(6) motion -- that it

17   has to be something tangible or a tangible document that

18   is -- or an intangible that is connected in some form to some

19   tangible right.  And courts have said, when you are talking

20   about data that is just kind of fungible data, it is not

21   really a conversion claim, and I don't know if there is a

22   state law case that recognizes this claim, and I think that's

23   a problem.

24           The big question I still have to find the answer to

25   is whether Judge Gershwin Drain's opinion would be binding on

1    this Court --

2            THE COURT:  It is not.

3            MR. COLLIER:  -- on the question of state law.

4    Right, I kind of think it is not.

5            THE COURT:  It's good.  You don't need to do any

6    more research on that.

7            MR. COLLIER:  Okay.

8            THE COURT:  I have the utmost respect for

9    Judge Drain --

10           MR. COLLIER:  Yeah.

11           THE COURT:  -- he's a tremendous United States

12   District Court judge, but nothing he says is binding on me

13   any more than anything I say is binding on him or any of my

14   other learned colleagues.  If the Sixth Circuit says it or

15   the United States Supreme Court, that's a different matter.

16           Now having said that, what Judge Drain says is

17   certainly going to be persuasive with me, and I'm going to

18   pay extremely careful attention because I know the fine work

19   that he does, but there is no doubt that he -- I'm not bound

20   by his decisions nor is he bound by mine.

21           MR. COLLIER:  Right.  So -- and I'm getting way

22   ahead of myself into our next 12(b)(6) motion -- one of the

23   issues is going to be should this federal court recognize

24   basically a new state law cause of action, and I have not

25   yet -- there may be out there -- but I haven't found yet a

1   state court case that recognizes conversion based on data

2   like this.

3           THE COURT:  So the Erie question for me is would

4   the Michigan Supreme Court recognize a conversion claim for

5   data?

6           MR. COLLIER:  Yes, and I think that has to be

7   influenced by the Sixth Circuit precedent that says when

8   federal courts are asked to recognize new state law causes of

9   action, they have to be extremely careful and they have to

10  defer essentially to no, that if it is a new cause of action,

11  federal courts are generally required to leave that to state

12  courts, but that's sort a trailer for what is coming.

13          THE COURT:  Okay.  Anything else?

14          MR. COLLIER:  If I could just look briefly at my

15  notes.

16          I don't think I have anything further.

17          THE COURT:  All right.  Thank you.

18          MR. COLLIER:  Thank you.

19          THE COURT:  Mr. Bigelow, will you mind coming back

20  up?

21          MR. BIGELOW:  Yes, Your Honor, just briefly.

22          THE COURT:  Do you mind if I start with my question

23  for you?

24          MR. BIGELOW:  Sure.

25          THE COURT:  What I want to make sure is that I

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.575   Page 32 of 59
Motion for Preliminary Injunction • September 6, 2017

32

1   understand exactly the claims that are being asserted against

2   the defendants that are here today and that are the subject

3   of your motion.

4           MR. BIGELOW:  Okay.

5           THE COURT:  I think Mr. Collier helpfully directed

6   me -- I had asked you a number of questions about the CFAA,

7   the Computer Fraud and Abuse Act, but the allege wrongdoer in

8   that count of your amended complaint is Ms. Shibanov, and do

9   you agree with that?

10          MR. BIGELOW:  I would have to agree with that,

11  Judge.

12          THE COURT:  Okay.  I mean that seems to me to be

13  fair.

14          So then the question is, what is the claim against

15  Mr. Seikaly?  Is it this receipt of converted property claim

16  that I was talking to Mr. Collier about?

17          MR. BIGELOW:  Well, it is that, Your Honor, and it

18  is also, as I've set forth in my brief, my reply brief,

19  18 U.S.C. 2113.  Certainly he's not entitled to possess this

20  property at all.

21          THE COURT:  What is -- just give me one second.

22          All right.  With respect to this 18 U.S.C. 2113 --

23          MR. BIGELOW:  Yes.

24          THE COURT:  -- that's a criminal statute, correct?

25          MR. BIGELOW:  Yes, it is, Your Honor.

Case 2:17-cv-11483-MFL-SDD  ECF No. 23  filed 09/12/17  PageID.576  Page 33 of 59
Motion for Preliminary Injunction • September 6, 2017

33

1      THE COURT:  Is there a civil cause of action for --

2      MR. BIGELOW:  I don't believe so, Your Honor.

3      THE COURT:  All right.  Even if that applies, the

4  part that would apply to Mr. Seikaly would appear to be

5  2113(c), which in your words precludes possession of property

6  stolen from a credit union, do you agree with that?

7      MR. BIGELOW:  Yes.

8      THE COURT:  But that section itself talks about one

9  of the elements being that the receiver of the property knows

10 the same to be property which has been stolen.

11     MR. BIGELOW:  Yes.

12     THE COURT:  Is there any evidence here on this

13 point that Mr. Collier was talking about that, even if we

14 assume that Ms. Shibanov wrongfully obtained the property, is

15 there any evidence that Seikaly knew that at the time he

16 received it?

17     MR. BIGELOW:  There is ample evidence, Your Honor,

18 because Mr. Seikaly in the state court case received the

19 documents that are attached to I guess Exhibit 2 as well as

20 Exhibit 3 to my reply brief, the employee fraud policy, as

21 well as the e-commerce policies indicating that all the

22 e-mails and documents of the credit union are property of the

23 credit union.

24     THE COURT:  That may be, but at the -- even if they

25 are property of the credit union, that doesn't mean that

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.577   Page 34 of 59
Motion for Preliminary Injunction • September 6, 2017

34

1    Shibanov didn't have a right to be in possession of it,

2    right?  I mean, while she is working there some e-mails from

3    the credit union and some files she's certainly free to

4    download, right?

5         MR. BIGELOW:  She was free to download them at the

6    time, but she was supposed to return the documents when she

7    worked on them and, you know, after she used them.  It

8    appears she hung on to those.

9         THE COURT:  But assume that she did hang on to

10    those, simply hanging on to them isn't evidence that she

11    stole them or even hung on to them with a criminal intent.  I

12    think somebody would be shocked if they worked for the credit

13    union and left the employment of the credit union and forgot

14    to return a file and the FBI showed up and said you've just

15    been indicted under this act for stealing our files.

16         What seems to me to be missing here is evidence

17    that the actors who are the defendants acted with some sort

18    of a criminal or unlawful intent.  You have presented

19    evidence that in your view she has, Shibanov, accessed the

20    files in a way that in your view exceeded her access and

21    you've suggested that Mr. Seikaly has the documents that she

22    obtained.  But where is the evidence that when that conduct,

23    if it happened, that when it happened, either of them acted

24    with some sort of an unlawful intent or state of mind?

25         MR. BIGELOW:  Well, if you look at Exhibit 2

1    attached to the reply brief, Your Honor, paragraph 10, it

2    indicates the credit union's computer system, including all

3    e-mail messages created, sent or received on the system, are

4    the credit union's property.  It is still the property of the

5    credit union.  It is not Ms. Shibanov's to give to anybody

6    else.

7            THE COURT:  I get that, but I mean let me give you

8    just a simple hypothetical to make the point.

9            This pen I'm holding up belongs to the

10   United States government, but when I walk around my chambers

11   during the day and I'm working on stuff sometimes I stick

12   these things in any pocket and I end up at home with a pen.

13   Gosh, I didn't mean to steal the United States government's

14   property, and even though everybody would agree the pen is

15   the property of the United States, I would like to think that

16   even the most aggressive prosecutor would not claim that I

17   acted with an unlawful intent simply because I possessed

18   property that belongs to the United States and not to me.

19           So what I'm trying to do is get myself over this

20   hurdle that -- of finding some sort of an unlawful intent to

21   go along with what you claim is unauthorized possession.

22           MR. BIGELOW:  The difference in that set of facts

23   is you didn't take the pen, go home and give it to your

24   neighbor.  That's what happened here.

25           THE COURT:  All right.  Let me give a new

1    hypothetical.  The pen looks like a lot of other pens I have

2    at home.  I take it home and my neighbor comes over says can

3    I borrow your pen, and I hand them the pen that is the

4    court's pen, but in my own mind I don't believe that I have

5    stolen it or taken it unlawfully.

6         I mean the -- I understand why in good faith you

7    may believe that this was an intentional effort to cheat your

8    clients by every actor on the other side of the V.  What I'm

9    trying to focus on is the evidence to support that.

10        MR. BIGELOW:  Well I think the document she did

11   sign, the fraud policy, paragraph 10, and Mr. Seikaly

12   received these documents and he was well aware of her

13   obligations to her employer, former employer.

14        THE COURT:  What's the evidence of that?

15        MR. BIGELOW:  The fact that he received these

16   documents too, Your Honor.  They were provided in discovery.

17   He knew well enough that he was getting documents that he

18   wasn't entitled to.

19        THE COURT:  What is the evidence of that?  I mean,

20   I understand you saying that, but here we are on a

21   preliminary injunction.  What's the evidence that, even by

22   way of affidavit at this point, that Mr. Seikaly actually

23   reviewed the credit union's policies when they were produced

24   during discovery, was aware of them, and was aware of them at

25   the time Ms. Shibanov allegedly delivered documents to him?

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.580   Page 37 of 59
Motion for Preliminary Injunction • September 6, 2017

37

1      MR. BIGELOW:  Well, I think the problem with

2  Mr. Seikaly's position right now is he hasn't come forward in

3  the -- I think we have shown a prima facie case here,

4  Your Honor, which would indicate the Court should grant the

5  preliminary injunction.  We haven't received any

6  countervailing evidence to the contrary as to what his intent

7  actually was.  There is nothing here.  There are legal

8  arguments, but there are no affidavits, no declarations.

9      THE COURT:  What is the prima facie evidence of bad

10  intent?  I will -- for the sake of this question I will

11  assume that you have -- if we use the term prime facie,

12  whatever that means, but you have presented evidence of

13  wrongful possession.  For the purposes of this question I'm

14  willing to make that assumption.  What is the evidence that

15  goes to anybody on the other side of the V's intent?

16      MR. BIGELOW:  Well, Your Honor, as set forth in the

17  amended complaint, Ms. Brown's declaration, and Mr. Seikaly's

18  obtaining of the documents, he knows they are documents that

19  certainly anybody would know but they are not documents of

20  Ms. Shibanov's, they are documents of the credit union.

21      And he certainly knew, when he was able to get the

22  employee policies, review those -- and I'm sure he thoroughly

23  did review those -- he knew he was getting documents that his

24  client wasn't entitled to keep.  They all have to do with

25  customer information, private social security numbers.  I

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.581   Page 38 of 59
Motion for Preliminary Injunction • September 6, 2017

38

1    think it is incomprehensible to think that he thought he was

2    legally getting these documents.  And when he was questioned

3    on where he got them, all he says is well, I legally obtained

4    them.  And when questioned some more, it has been, well, it's

5    privileged, it is attorney-client privilege and I don't have

6    to produce it, and that's simply not true.  We don't have any

7    countervailing evidence to rebut what's before the Court.

8            THE COURT:  Anything else?  Oh, let me ask you

9    this, Mr. Bigelow.  Mr. Collier has indicated that with

10   respect to his clients, he would agree to the entry of an

11   order that says if and to the extent they received documents

12   from Ms. Shibanov that were obtained by her exceeding her

13   access, he will put those documents in a secure file and not

14   disseminate them or make any use of them other than using the

15   three documents that are already part of the publically

16   available Macomb County Circuit Court record and sharing them

17   with his retained counsel, namely, Mr. Collier.

18           Do you want me -- if I were to decline to enter the

19   full scope of the injunction that you request, would you want

20   me to enter the type of order that I just proposed?

21           MR. BIGELOW:  I don't believe it would be

22   appropriate, Your Honor.  First of all those three documents,

23   they are in the record.  I --

24           THE COURT:  Hold on.  Let me -- are you saying you

25   would prefer that I -- for the sake of my question, I want to

1    be real clear about this.  Assume for the sake of this

2    question that I will not enter the injunction of the scope

3    that you are asking.  If that were to be my decision, would

4    you want me to enter the injunction that Mr. Collier and I

5    were discussing?

6            MR. BIGELOW:  No, and that was one of the issues I

7    was going to cover.

8            THE COURT:  Okay.

9            MR. BIGELOW:  But I don't think there should be any

10   further sharing of the documents with counsel.  Those three

11   documents that are in the record, they are out there, I

12   acknowledge that Mr. Seikaly is going to be -- his attorneys

13   already have those.  But we are talking about private and

14   confidential records potentially involving hundreds of

15   customers, board members, employees.  There shouldn't be any

16   further sharing of the documents.  That's just another --

17           THE COURT:  What if I added into this order that I

18   am discussing that the documents can be shared with counsel

19   and counsel shall make no use of them other than within this

20   litigation, and if they are used in this litigation involved

21   with the court they should be filed under seal?

22           MR. BIGELOW:  I just don't think that's what the

23   Court should do, Your Honor.  They're my client's -- it is my

24   client's property, Your Honor.  They should get it back.

25           THE COURT:  How can -- how could I conceivably

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.583   Page 40 of 59
Motion for Preliminary Injunction • September 6, 2017

40

1    prevent -- again, let me stop you for a second.  For the sake

2    of this question, I want you to assume I'm not going to order

3    them to give it back, just for the sake of this question.

4    And so the question is I'm throwing out a potential offer to

5    you, I'm saying your clients may not get the full loaf but

6    I'm offering what could conceivably be, in my mind, a very

7    substantial level of protection for interests that could well

8    be legitimate by your client and I'm asking would you rather

9    get nothing or what I'm offering?

10            MR. BIGELOW:  And this is a hypothetical?

11            THE COURT:  The hypothetical is I decide I'm not

12   going to enter the scope of the injunction that you have

13   asked for, so that ship has sailed in my hypothetical, and so

14   now your two choices are nada, nothing, or what I have

15   proposed in discussions with Mr. Collier.  Would you rather

16   have the nothing or the what I have discussed with

17   Mr. Collier?

18            MR. BIGELOW:  Well, certainly if I had to choose, I

19   would not want the nothing situation.  But, again, it is my

20   client's property, Your Honor.  They should get them back.

21            And I guess the main remaining point I would make

22   on that issue is they had an opportunity to take the

23   documents they thought were relevant in the state court case

24   and use them.  They picked three documents, they used them.

25   There are potentially all of these other records out there

Motion for Preliminary Injunction • September 6, 2017

41

```
 1    that they have no use for.  They are my client's records and
 2    it is my client's property.  They should get the property
 3    back.
 4            You touched on the conversion issue, Judge, and I
 5    haven't fully researched the issue in a while, but what
 6    sticks out in my mind is the statute and the case law does
 7    indicate that any unlawful act of dominion or control over
 8    another's property is conversion, and I think that's what we
 9    have here.
10            THE COURT:  Isn't conversion an intentional tort?
11            MR. BIGELOW:  Yes, it is, it is.  A few weeks ago I
12    did look at a -- it was actually an opinion from a judge in
13    circuit court I believe, but it was ruled that it was an
14    intentional tort and it certainly is.
15            I have nothing further, Judge.
16            THE COURT:  Okay.  Thank you.
17            MR. BIGELOW:  Thank you.
18            THE COURT:  Mr. Collier, any last thoughts?
19            MR. COLLIER:  Nothing further, Judge.  Thank you.
20            THE COURT:  Mr. Collier, how would you describe
21    this universe of documents, what terminology would be the way
22    to -- there are the -- I want to make sure I have this list.
23    What are the three documents that are part of the Macomb
24    Circuit record?
25            MR. COLLIER:  There is the roster which includes
```

Case 2:17-cv-11483-MFL-SDD ECF No. 23 filed 09/12/17 PageID.585 Page 42 of 59
Motion for Preliminary Injunction • September 6, 2017

42

1  social security numbers, there is a management action report,

2  and there is a response to a state agency's investigation.

3  And then it is alleged that Mr. Seikaly has other documents

4  that Ms. Shibanov obtained from the credit union and that

5  were not produced by the credit union in discovery.

6          I think that's the best I can do on that one.

7          THE COURT:  Okay.

8          MR. BIGELOW:  Your Honor, if I may interject?

9          THE COURT:  Please.

10         MR. BIGELOW:  The three documents are set forth in

11  my brief at Exhibit 11 attached to Ms. Brown's declaration.

12         THE COURT:  That's very helpful.  Thank you.

13         Okay.  Mr. Collier, you are welcome to say

14  anything, but I think you have answered my questions.

15         MR. COLLIER:  Okay.  Thank you.

16         THE COURT:  You know what?  What I want to do is

17  take a short ten-minute break, and then I'm going to come

18  back and I will give you an oral ruling, and I want to talk

19  about next steps in this case.  So let's take a short break

20  and we will reconvene.

21         MR. BIGELOW:  Thank you, Your Honor.

22         (Court recessed at 10:33 a.m.)

23                    —   —   —

24         (At 10:51 a.m. Court reconvenes, Court and counsel

25            present.)

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.586   Page 43 of 59
Motion for Preliminary Injunction • September 6, 2017

43

1        THE CASE MANAGER:  All rise.  Court is back in

2  session.

3        THE COURT:  All right.  One of the things that I

4  wanted to look at and I did very briefly during the break and

5  I don't have an answer to is whether I have subject matter

6  jurisdiction over the claims that are asserted against

7  Mr. Collier's clients.  And I want to think out loud with you

8  and I'm going to ask you to submit argument on this point.

9        It is my understanding from the discussion with

10  Mr. Bigelow, that Count 1, the violation of the Computer

11  Fraud and Abuse Act, is asserted against Ms. Shibanov.  Is

12  that correct, Mr. Bigelow?

13        MR. BIGELOW:  That is correct, Your Honor.

14        THE COURT:  And it is further my understanding that

15  the conduct underlying that count occurred in 2013.  Is that

16  correct, Mr. Bigelow?

17        MR. BIGELOW:  I believe so, yes.

18        THE COURT:  I'm looking at paragraph 14 of your

19  amended complaint.  It says on January 29, 2013, at

20  11:47 p.m.

21        So am I correct when I say that the conduct

22  underlying the federal claim in Count 1 occurred in 2013?

23        MR. BIGELOW:  Yes, Your Honor.

24        THE COURT:  And it looks like the violations -- the

25  state law violations against Mr. Collier's clients all

1    occurred in litigation that was filed in 2015; is that

2    correct?

3            MR. BIGELOW:  Yes, Your Honor.

4            THE COURT:  All right.  So the basis of my original

5    jurisdiction over the case is the claim in Count 1, the one

6    federal claim, so that would be federal question

7    jurisdiction, there is not diversity jurisdiction because the

8    parties are from Michigan; is that correct?  At least your

9    client would be a Michigan corporation; is that correct?

10           MR. BIGELOW:  Yes, they are.

11           THE COURT:  And Mr. Seikaly is a Michigan citizen;

12   is that correct, Mr. Collier?

13           MR. COLLIER:  Yes.

14           THE COURT:  So it doesn't appear that there is

15   diversity jurisdiction.

16           So the question as I'm trying to understand it is

17   where there is a single federal claim against one defendant

18   and a number of state law claims against the other

19   defendants, is there some basis for me to have subject matter

20   jurisdiction over the defendants who are named only in the

21   state law claims.

22           I did a very short amount of research, just barely

23   scratched the tip of the iceberg here, and it looks to me as

24   if this is addressed in 28, United States Code, Section 1367,

25   which on a very quick read appears to indicate to me that

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.588   Page 45 of 59
Motion for Preliminary Injunction • September 6, 2017

45

1    under a circumstance like this I would have supplemental

2    jurisdiction over state law claims if those claims were -- if

3    they formed part of the same case or controversy under

4    Article III of the United States Constitution as the single

5    federal claim.

6            First of all, I'm not sure that's the right test.

7    Again, I did two minutes of research on the break.  If that's

8    the right test, it is not clear to me that would be satisfied

9    here that incidents occurring in 2013 would be part of the

10   same case or controversy as incidents occurring in 2015 and

11   2016.  I don't mean to prejudge the question, I merely mean

12   to ask the question.  But because subject matter

13   jurisdiction, I have an obligation to look at that first and

14   foremost before I do anything, what I would ask is for

15   supplemental submissions from each of you on the question of

16   whether I have supplemental jurisdiction over the claims

17   against Mr. Seikaly and his firm that are asserted in the

18   first amended complaint.

19           The second and related question on jurisdiction is,

20   assuming that Section 1367(a) is satisfied and I have

21   supplemental jurisdiction, the next question is should I

22   decline to exercise that jurisdiction on one of the bases set

23   forth in Section 1367(c), and you should -- I would ask each

24   of you to address that.

25           Mr. Collier talked about his view of the novelty or

1    complexity of the conversion claim.  That could conceivably

2    be a basis to decline supplemental jurisdiction under

3    1367(c)(1).

4              So that's a preliminary matter that absolutely

5    needs to be addressed before I have the authority to enter

6    any sort of an order.

7              How long do you folks need to file those

8    supplements?  I don't want to jam anybody here.

9              MR. BIGELOW:  If we could have a couple weeks,

10   Judge.

11             THE COURT:  Is two weeks enough?

12             MR. BIGELOW:  Yes.

13             THE COURT:  I don't mind three.

14             MR. COLLIER:  I think three might be nice if that

15   would work.

16             THE COURT:  All right, three.  And would you file

17   simultaneously?

18             MR. BIGELOW:  Sure.

19             MR. COLLIER:  Yes, that's fine with me.

20             The only question I would add is, our response to

21   the new complaint is due I think September 22nd, so there

22   might be a question of whether we extend that based on this

23   briefing.

24             THE COURT:  Yes, I will extend that to 14 days

25   after I enter an order on the question of subject matter

Case 2:17-cv-11483-MFL-SDD   ECF No. 23   filed 09/12/17   PageID.590   Page 47 of 59
Motion for Preliminary Injunction • September 6, 2017

47

 1   jurisdiction.

 2          All right.  Now, we have put in a lot of time and

 3   effort on the question of the injunction, and what I want to

 4   do with you, I'm not going to enter any sort of an order

 5   unless and until I'm confident that I have subject matter

 6   jurisdiction to act.  But I want to tell you what I will do

 7   if I conclude that I have subject matter jurisdiction so that

 8   we can keep this matter moving forward.

 9          If I conclude that I have subject matter

10   jurisdiction, I am going to deny Mr. Bigelow's request for

11   the full scope of the injunction prayed for in his motion,

12   but I will enter an order with restrictions on the clients

13   that Mr. Collier represents.

14          The order that I will enter will provide as

15   follows:  It will indicate that Mr. Seikaly and his firm have

16   obtained from Ms. Shibanov documents that she obtained from

17   the credit union and that were not produced by the credit

18   union during discovery.  Those documents fall into two broad

19   categories; the three documents that were filed in the state

20   court and that Mr. Bigelow helpfully directed me to, the

21   documents that are a part of docket entry 7-12 and that run

22   from page ID 78 through page ID 89.  With respect to those

23   three documents, Mr. Collier's clients may utilize those

24   documents in the state court litigation that is currently

25   pending on appeal in the Michigan Court of Appeals.  I don't

1    know what the Court of Appeals case number is, but the

2    Macomb County Circuit Court number was 2015-0524-CZ.

3         So those three documents that I just identified,

4    Mr. Collier's clients can continue to utilize in the state

5    court proceedings now in the Court of Appeals.

6         With respect to the remainder of the documents that

7    fall within this set of documents, Mr. Collier's clients may

8    disclose those documents to Mr. Collier and his law firm

9    solely for the purpose of use in defending the claims in this

10   action, and neither Mr. Collier nor his clients may make any

11   other use of the remainder of the documents other than for

12   use in this litigation.

13        Those are the only two exceptions to the

14   prohibition that I would put in place by agreement of

15   Mr. Collier.  Other than those two exceptions, the documents

16   that I have described, being those that Mr. Seikaly and his

17   firm may have received from Ms. Shibanov but not during

18   discovery, those documents shall be stored in a secure

19   location within the Seikaly firm, and not disclosed to

20   anybody or used for any purpose other than as I have

21   indicated.

22        That would be the order that I would enter, again,

23   by virtue of Mr. Collier's agreement to do that.

24        Here is how I would see the four injunction factors

25   here.  With respect to the first factor, a likelihood of

1    success on the merits, I am not persuaded by the submissions

2    and evidence by Mr. Bigelow that there has been a likelihood

3    of success on the merits established with respect to the

4    claims against Mr. Collier's clients, at least at this point.

5            The main thing that is missing, in my view, from

6    this record today is any evidence going to the state of mind,

7    the level of intent, or the level or type of knowledge that

8    Mr. Seikaly and his law firm may have had when they received

9    or possessed the documents in question here.

10           I haven't seen any evidence that they acted with

11   any sort an intent to defraud or cheat, any evidence that

12   they knew that the documents had been stolen, or any evidence

13   that even as of today they should be on notice that the

14   documents are stolen as opposed to documents that were

15   properly possessed by Ms. Shibanov.

16           With respect to the second factor, would there be

17   irreparable harm to the credit union in the absence of the

18   requested injunction.  In light of the order that I am going

19   to enter by virtue of Mr. Collier's agreement I think there

20   would be no irreparable harm absent the additional injunctive

21   relief that Mr. Bigelow seeks here.  The order that I will

22   enter, it seems to me, is more than sufficient to protect any

23   legitimate privacy interest that may be at stake for the

24   credit union's employees and officers whose information is

25   contained in these documents.

1    With respect to the harm to others factor, I don't

2 think there is a particularly relevant factor here.  I don't

3 think it cuts strongly one way or another.

4    With respect to the public interest and assuring

5 compliance with the integrity of documents and data, I think

6 that is sufficiently protected by the injunction that I will

7 enter by virtue of Mr. Collier's order.

8    And the last factor, which would kind of be a

9 balancing of the harms, I think that any injunctive relief

10 beyond that which I would -- which I have ordered I think

11 would unfairly impair Mr. Seikaly's ability and his firm's

12 ability to defend themselves in this case.  I think that

13 requiring a full-sale return of the documents at this early

14 point without allowing access to his counsel and his firm's

15 counsel would impair his ability to defend himself here.

16    So that's how I see the balance playing out, and if

17 I'm convinced that I have subject matter jurisdiction I would

18 enter an order and will enter an order along the lines I have

19 indicated.

20    I want to talk further, but any questions about

21 what I would rule if I find I have subject matter

22 jurisdiction, Mr. Bigelow?

23    MR. BIGELOW:  I just had one comment or question,

24 Judge.

25    THE COURT:  Please.

1      MR. BIGELOW:  Would the Court be willing to enter

2  an order providing that if these documents, the unidentified

3  documents, are going to be used, produced in court, that they

4  be supplied under seal?

5      THE COURT:  Yes.  Thank you for reminding me of

6  that.  In fact I think I had mentioned that but I, as I do so

7  often, I lost track of it and I appreciate you reminding me

8  of that.

9      John, will you make a note of that?

10      THE LAW CLERK:  Yes.

11      THE COURT:  All right.

12      Anything else, Mr. Bigelow, questions or comments

13  at this point?

14      MR. BIGELOW:  No, Your Honor.

15      THE COURT:  Mr. Collier?

16      MR. COLLIER:  Nothing from me.  Thank you.

17      THE COURT:  All right.  Let me change gears here

18  and talk about what happens moving forward.

19      It seems to me there has got to be a creative

20  solution to this situation rather than, in the old parlance,

21  making a federal case out of this.  This seems to me to have

22  the potential of throwing a lot of time and money at

23  something that is going to end in a spot where nobody is

24  happy or satisfied.  It seems to me that some sort of

25  creative out-of-the-box thinking would solve these problems.

 1      Mr. Bigelow's clients want their documents back.

 2  Totally understandable.  Mr. Collier's client wants to hang

 3  on to them at least as long as necessary.  It seems to me

 4  that some sort of creative solution of maybe, I don't know,

 5  giving the documents to somebody to hold in escrow at some

 6  point, some sort of settlement that puts them there and then

 7  at some point when Mr. Collier's clients reach some level of

 8  comfort they are then given back to Mr. Bigelow, but they are

 9  held by some third party so that no use can be made of them

10  and they are effectively taken out of circulation.

11      That's the type of thinking that seems to me to be

12  important here.  I can't see this case ending well for either

13  side in this respect.

14      To go through, all the way through discovery and a

15  trial, it seems to me the best-case scenario, Mr. Bigelow,

16  for your side would be some sort of final judgment in which

17  you get return of the documents and some damage number.  As I

18  sit here today, that damage number seems to me -- I'm having

19  trouble coming up with a big number.  And with respect to the

20  availability of attorneys fees, there would be a real

21  question about whether fees would be available and, if so,

22  how much would be properly awarded given what's at stake and

23  what ultimately may be awarded by way of damages.

24      And on Mr. Collier's side, is this really a case

25  where your clients or their insurance carrier wants to

1    litigate and throw a ton of money at something?  Even if you

2    hit a grand slam and they said you didn't do anything wrong

3    and you get to keep the documents, I don't know, it just

4    seems to me that this case cries out for creative thinking,

5    creative thinking that finds a way to accommodate two

6    legitimate goals.

7            I respect and appreciate, Mr. Bigelow, your

8    client's interest in getting those documents out of

9    circulation and away from the Seikaly firm.  I respect

10   appreciate Mr. Collier's interest in wanting to assure that

11   those documents are available at least for the purpose of

12   defending the claims.  But if we took the air out of the

13   case, maybe -- out of this case, maybe there is a way to get

14   to the bottom line and to get to something that accommodates

15   both these goals without you having to brief really difficult

16   questions of federal jurisdiction and the like.

17           So what I want to ask at this point is, does it

18   make sense to take a breather and have you folks meet with

19   some facilitator who could help think creatively and bring

20   the parties together?

21           Mr. Bigelow, your reactions on that?

22           MR. BIGELOW:  Well, first of all, we'd need to get

23   Ms. Shibanov served, but I understand the Court's thought on

24   mediation.  But the problem my client has is they really

25   don't want to do anything until they get their documents

1  back, Your Honor.  It's --

2       THE COURT:  Well, put yourself in your client's

3  position, and what your clients are going to hear today is

4  this stickler up in Flint wearing a black robe just ordered

5  me to brief a really complicated question of supplemental

6  federal court jurisdiction, and my guess is it will cost you,

7  client, X dollars, and he's not giving us our documents back

8  now.  So we could try to have a discussion with a talented,

9  forceful, experienced facilitator who can lean on Mr. Collier

10  to find a creative way to get these documents out of

11  circulation, or our options are we go the full length of this

12  case in district court without our documents, or I file an

13  expensive appeal to the Sixth Circuit because I do have the

14  right to file an interlocutory appeal from an order with

15  respect to an injunction and so, client, here's your options,

16  and, client, let me tell you -- you will have to tell them

17  what you think the Sixth Circuit would do if you were

18  inclined to appeal from the type of order that I have

19  entered, you will have your own views, whatever.

20       But, in other words, it seems to me that if the

21  client's reaction is we don't want to facilitate because we

22  want our documents back, I would respectfully suggest to the

23  client that that's entirely backwards.  That the path to

24  conceivably getting the documents back is some sort of

25  facilitation where somebody creatively finds a way to get the

1   documents back at some point.  Because absent that I have

2   indicated I'm not going to order them returned until the end

3   of this case, and so the only choice absent a facilitation

4   would be a Sixth Circuit appeal where the Sixth Circuit is

5   going to be told Leitman entered an order precluding Seikaly

6   from doing anything with the documents but it was abuse of

7   discretion not to order more.

8           So it seems to me that facilitation is exactly the

9   way to get what your clients want, if there is a reasonable

10  way.  I say that again with the greatest respect, and I don't

11  represent clients anymore so that's one of the good parts of

12  my job, I don't have to explain things like this to them, but

13  that's my thinking.

14          Mr. Collier, what are your thoughts on whether we

15  do this?

16          MR. COLLIER:  I think that makes a lot of sense,

17  and I think that might be the way to solve this case.  I need

18  to get my client's consent, but I really think it makes a lot

19  of sense.

20          MR. BIGELOW:  Your Honor, I would just like to get

21  some discovery and get the documents through discovery and

22  then perhaps we could consider facilitation.  I think that's

23  the more appropriate approach.

24          THE COURT:  All right.  So what I will -- first of

25  all, I'm not going to force anybody to facilitate if they

1    don't want.  So let me suggest this:  Would you, as the first

2    order of business, prepare and file the supplemental briefs.

3    Because the first thing I've got to do before I can exercise

4    any authority is to be comfortable that I have the authority.

5           So let's, step one, file your briefs, I will review

6    them, and I will do it -- I will try to make it a priority,

7    and to get a ruling out on whether I have jurisdiction.

8           If I have jurisdiction, the next thing you are

9    going to get from me is an order along the lines that I just

10   described addressing the restrictions that I would put on

11   Mr. Seikaly's use of the documents, and I use Mr. Seikaly to

12   refer to his firm and the defendants represented by

13   Mr. Collier.

14          Then at that point, Mr. Bigelow, if you wanted to

15   send a discovery request to Mr. Collier that said -- or to

16   his clients that said -- or to Ms. Shibanov, produce all the

17   documents that you obtained from the credit union other than

18   through discovery, maybe that could be one focused set of

19   discovery, and then you can at least see what's there and

20   then decide if you think facilitating makes some sense.

21          Does that sound like at least a reasonable step for

22   moving forward?

23          MR. BIGELOW:  Absolutely, Your Honor.

24          THE COURT:  Okay.  Mr. Collier, does that sound

25   okay to you?

Motion for Preliminary Injunction • September 6, 2017

57

```
 1              MR. COLLIER:  Yes.

 2              THE COURT:  All right.  Okay.  Then did we say

 3     three weeks on the briefs?

 4              MR. COLLIER:  Yes.

 5              THE COURT:  Is that the 27th?  That's a Wednesday?

 6     Does that work, e-filing on the 27th simultaneously,

 7     addressing the question of whether I have jurisdiction?

 8              Now, if I have missed the boat and 1367(a) and (c)

 9     are not the relevant sources of authority here, please feel

10     free to direct me to the right ones.  Again, I did less than

11     ten minutes of research on the short break.  I was just

12     throwing those up as possible starting points.

13              The ultimate question to address is whether I have

14     subject matter jurisdiction over the claims against

15     Mr. Collier's clients and, if I do, do I also have the

16     discretion to decline to assert that jurisdiction?  And if I

17     have that discretion to decline, should I decline?  Those are

18     the questions that would be helpful.

19              Anything else today, Mr. Bigelow, before we

20     adjourn?

21              MR. BIGELOW:  Nothing further, Your Honor.

22              THE COURT:  Mr. Collier?

23              MR. COLLIER:  Nothing.  Thank you.

24              THE COURT:  Okay.  Thank you both for your briefing

25     argument and for taking the time to join me up here this
```

1    morning.  I will look forward to your supplemental briefs,

2    and we will stay in touch.

3              MR. BIGELOW:  Thank you.

4              MR. COLLIER:  Thank you, Your Honor.

5              (Proceedings concluded at 11:16 a.m.)

6                        —   —   —

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        *CERTIFICATION*

2

3          I, Robert L. Smith, Official Court Reporter of

4 the United States District Court, Eastern District of

5 Michigan, appointed pursuant to the provisions of Title 28,

6 United States Code, Section 753, do hereby certify that the

7 foregoing pages comprise a full, true and correct transcript

8 taken in the matter of UKRAINIAN FUTURE CREDIT UNION vs.

9 SEIKALY, et al., Case No. 17-11483, on Wednesday,

10 September 6, 2017.

11

12

13                              *s/Robert L. Smith*
                             Robert L. Smith, RPR, CSR 5098
14                              Federal Official Court Reporter
                             United States District Court
15                              Eastern District of Michigan

16

17

18 Date:   09/12/2017

19 Detroit, Michigan

20

21

22

23

24

25