UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UKRAINIAN FUTURE CREDIT UNION, a state chartered credit union, | Case No. 2:17-cv-11483-MFL |
| | Hon. Matthew F. Leitman |
| Plaintiff, | |
| vs. | Mag. Judge Stephanie Dawkins Davis |
| WILLIAM R. SEIKALY, an individual, JEFFREY T. STEWART, an individual, LARRY W. BENNETT, an individual, LIDIA SHIBANOV, an individual, JOHN/JANE DOE, an individual, SEIKALY, STEWART & BENNETT, P.C., a Michigan professional corporation, | |
| Defendants. | |

_____/

**Defendants William Seikaly, Jeffrey Stewart, Larry Bennett, and Seikaly, Stewart & Bennett, P.C.'s Brief in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint**

Collins Einhorn Farrell PC
Michael J. Sullivan (P35599)
Trent B. Collier (P66448)
Kellie Howard Goudy (P69009)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Trent.Collier@ceflawyers.com
*Attorneys for Defendants William Seikaly,*
*Jeffrey T. Stewart, Larry Bennett, and*
*Seikaly, Stewart Bennett, P.C.*

# Table of Contents

Index of Authorities..................................................................................ii

Concise Statement of Issues Presented.....................................................iv

Controlling/Most Appropriate Authority.....................................................v

Introduction............................................................................................1

Relevant Facts and Procedural History.......................................................2

   A.  Proceedings in the Macomb County Circuit Court ...........................2

   B.  Procedural history of federal action .................................................4

Standard of Review .................................................................................6

Argument 1: Independent Economic Value...................................................7

   A claim under the Defend Trade Secrets Act requires a "trade secret"
   as defined in 18 U.S.C. § 1839. A trade secret has "independent
   economic value." The Credit Union alleges that its confidential
   documents have economic value to the Credit Union, but does not
   allege that they have economic value to anyone else. Therefore, the
   Credit Union has not alleged a trade secret. Its proposed claim is
   futile..........................................................................................7

Argument 2: Intent ..................................................................................12

   The Defend Trade Secrets Act applies only when, among other things,
   a defendant acts with the intent to convert a trade secret to the
   economic benefit of someone other than the trade secret's owner. The
   proposed claim does not allege that the Seikaly Parties acted with the
   intent to convert the documents at issue to someone's economic
   benefit. Therefore, the Defend Trade Secrets Act claim is futile........12

Conclusion ............................................................................................17

i

# Index of Authorities

## *Cases*

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................7

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................7

*PEO Experts CA, Inc. v. Engstrom,*
No. 217CV00318KJMCKD, 2017 WL 4181130
(E.D. Cal. Sept. 21, 2017) ....................................................14

*Pyro Spectaculars N., Inc. v. Souza,*
861 F. Supp. 2d 1079 (E.D. Cal. 2012) ................................11

*Rose v. Hartford Underwriters Ins. Co.,*
203 F.3d 417 (6th Cir. 2000) ..................................................6

*U.S. v. Howley,*
707 F.3d 575 (6th Cir. 2013) .............................................8, 10

## *Statutes*

18 U.S.C. § 1832 ......................................................................v

18 U.S.C. § 1832(a)................................................. 2, 13, 14, 16

18 U.S.C. § 1836 ..............................................................v, 1, 7

18 U.S.C. § 1836(b)(1)..............................................................7

18 U.S.C. § 1839 ............................................. iv, v, 2, 7, 10, 12

18 U.S.C. § 1839(3)..................................................................8

18 U.S.C. § 1839(3)(B) ............................................................ 10, 11

18 U.S.C. §1832(a)(3) ................................................................. 14

## Other Authorities

18 U.S.C. § 1833 note ............................................................... 14

Michelle Evans, *Plausibility Under the Defend Trade Secrets Act*, 16 J.
    MARSHALL REV. INTELL. PROP. L. 188, 189 (2017) ................................... 7

## Rules

Fed. R. Civ. P. 15 .................................................................... 6

Fed. R. Civ. P. 15(a)(2) ........................................................ v, 6

# Concise Statement of Issues Presented

1.  A claim under the Defend Trade Secrets Act requires a
    "trade secret" as defined in 18 U.S.C. § 1839. A trade
    secret has "independent economic value." The
    plaintiff's proposed amended complaint alleges that its
    confidential documents have economic value to itself,
    but doesn't allege that they have economic value to
    anyone else. Has the plaintiff alleged a viable claim
    under the Defend Trade Secrets Act?

    Plaintiff presumably answers:    Yes.

    The Seikaly Parties answer:      No.

    This Court should answer:        No.

2.  The Defend Trade Secrets Act applies only when,
    among other things, a defendant acts with the intent to
    convert a trade secret to the economic benefit of
    someone other than the trade secret's owner. The
    plaintiff's proposed claim does not allege that the
    defendants acted with the intent to convert the
    plaintiff's documents to someone's economic benefit.
    Has the plaintiff alleged a viable claim under the
    Defend Trade Secrets Act?

    Plaintiff presumably answers:    Yes.

    The Seikaly Parties answer:      No.

    This Court should answer:        No.

iv

## Controlling/Most Appropriate Authority

Fed. R. Civ. P. 15(a)(2).

18 U.S.C. § 1832.

18 U.S.C. § 1836.

18 U.S.C. § 1839.

# Introduction

Plaintiff Ukrainian Future Credit Union continues to search for a way to make a federal case out of its state-court discovery dispute with Defendants William Seikaly, Jeffrey Stewart, Larry Bennett, and Seikaly, Stewart & Bennett, P.C. (the "Seikaly Parties"). In its original complaint, the Credit Union asserted that the Seikaly Parties are liable under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. But it couldn't allege supporting facts. Then it asserted that the Seikaly Parties' *client* was liable under the Computer Fraud and Abuse Act and its state-law claims against the Seikaly Parties were within the Court's supplemental jurisdiction. When the Court asked for briefing on whether the Credit Union's state-law claims against the Seikaly Parties are actually within its jurisdiction, the Credit Union came up with a new theory.

This time, the Credit Union's *Motion for Leave to File Second Amended Complaint* (Doc. 27) proposes adding a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836. This claim is futile for two primary reasons.

First, a *trade secret* under the Act has "independent economic value." 18 U.S.C. § 1839. The Credit Union does not allege that its confidential documents have economic value to anyone other than itself. (Proposed Complaint, Doc. 27-1, PgID 636, ¶55). Second, the Credit Union doesn't allege that the Seikaly Parties obtained or possessed those supposed "trade secrets" for the purpose of deriving an economic benefit from them. 18 U.S.C. § 1832(a). The Court should therefore deny the Credit Union's motion to amend as futile and dismiss all claims against the Seikaly Parties for the reasons stated in their Supplemental Brief. (Doc. 28).

## Relevant Facts and Procedural History

### A. Proceedings in the Macomb County Circuit Court

The parties have already briefed many of the facts relevant to the Credit Union's allegations. *See, e.g.,* the Seikaly Parties' Supplemental Brief (Doc. 28). This brief provides an abridged version.

This action arises out of a 2015 lawsuit in the Macomb County Circuit Court. *Ukrainian Future Credit Union v. Garak,* Macomb County Circuit Court Case No. 15–0524–CZ. The Credit Union sued Lidia and Vasily Shibanov, Andrii and Svitlana Garak, and others,

alleging that they were involved in obtaining a loan under fraudulent pretenses. The Seikaly Parties represented Lidia Shibanov.

Seikaly inadvertently filed a roster of Credit Union employees with unredacted Social Security numbers as an exhibit to Shibanov's summary-disposition motion. (*First Amended Complaint*, Doc. 12, PgID 443, ¶19). The Credit Union's attorney raised this issue several months later, and Seikaly immediately offered to redact them. The Macomb County Circuit Court later did exactly that, rejecting the Credit Union's claims for broader relief.

The Credit Union also accused Seikaly of stealing the roster, a letter the Credit Union submitted to the State of Michigan Credit Union Examiner, and a copy of a Management Action Report. (*First Amended Complaint*, Doc. 12, PgID 443-444, ¶¶ 20-21). The Macomb County Circuit Court rejected these allegations, and the Michigan Court of Appeals denied the Credit Union's interlocutory application to appeal issues relating to these documents. *Ukranian* [sic] *Future Credit Union v Garak* (COA Case No. 335688). The Michigan Attorney Grievance Commission also dismissed the Credit Union's request for investigation.

3

("Exhibit 12" to Credit Union's *Motion for Preliminary Injunction*, Doc. 7-13, PgID 90).

After the Macomb County Circuit Court granted summary disposition in Shibanov's favor, the Credit Union filed a claim of appeal with the Michigan Court of Appeals. That appeal remains pending.

On August 4, 2017, the Macomb County Circuit Court held an evidentiary hearing on Shibanov and Holyk's motions for case-evaluation sanctions in the underlying case. (*See* Transcript excerpt, Doc. 28-10, PgID 849). Again, the Credit Union asserted that the Seikaly Parties obtained documents illegally. The Circuit Court later entered an order awarding Shibanov and her attorneys $70,049.37 in attorney fees. (*Order Awarding Defendants Lidia Shibanov and Ihor Holyk Actual Attorney Fees and Costs Pursuant to MCR 2.403(O)*, Doc. 28-11, PgID 860).

**B. Procedural history of federal action**

The Credit Union filed its complaint against Seikaly, his law firm, and a "John/Jane Doe" on May 9, 2017. (*Complaint,* Doc. 1, PgID 1). It alleged that Seikaly and his law firm accessed the Credit Union's computers or computer networks in violation of the Computer Fraud

4

and Abuse Act, 18 U.S.C. § 1030. (*Id.,* Doc. 1, PgID 6, ¶¶ 19-20). The

Credit Union also filed a motion for a preliminary injunction that asked

the Court to compel Seikaly to return any Credit Union documents he

obtained through means other than the Credit Union's own document

production in the underlying action. (*Motion for Preliminary Injunction,*

Doc. 7, PgID 31). Seikaly and his law firm filed a motion to dismiss

(Doc. 9, PgID 92) and a response to the injunction motion. (Doc. 11,

PgID 266).

The Credit Union later filed an amended complaint, changing its

factual allegations and theories. This time, it alleged that Lidia

Shibanov exceeded her authorized access as an employee in early 2013.

(*First Amended Complaint,* Doc. 12, PgID 442, 444-448). The

amendment abandoned the claim that Seikaly violated the Computer

Fraud and Abuse Act, but it asserted that Seikaly used these

documents in 2016 during litigation in the Macomb County case. (*Id.,*

Doc. 12, PgID 442-443, ¶ 17-18; PgID 448, ¶ 35).

The Court heard argument on the Credit Union's preliminary-

injunction motion on September 6, 2017. (Injunction Hearing

Transcript, Doc. 23, PgID 544-601). At the conclusion of the hearing, the

Court ordered supplemental briefing on whether the Court had jurisdiction over the Credit Union's claims against the Seikaly Parties. Before filing its supplemental brief, the Credit Union filed the current *Motion for Leave to File Second Amended Complaint* (Doc. 27).

## Standard of Review

Federal Rule of Civil Procedure 15 governs amendments to pleadings. It states that a party can amend "once as a matter of course[,]" and then with the opposing party's consent or the Court's leave:

> In all other cases [besides those in which a party can amend as a matter of course], a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(2). The decision whether to allow an amendment is in the Court's discretion, though a district court must "state a basis for its decision to deny a motion to amend." *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

A court may properly deny a motion to amend when the proposed amendment is futile. *Rose,* 203 F.3d at 420. And "[a] proposed amendment is futile if the amendment could not withstand a Rule

6

12(b)(6) motion to dismiss." *Id.* Consequently, a claim is futile unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

## Argument 1: Independent Economic Value

**A claim under the Defend Trade Secrets Act requires a "trade secret" as defined in 18 U.S.C. § 1839. A trade secret has "independent economic value." The Credit Union alleges that its confidential documents have economic value to the Credit Union, but does not allege that they have economic value to anyone else. Therefore, the Credit Union has not alleged a trade secret. Its proposed claim is futile.**

The Defend Trade Secrets Act of 2016, PL 114-153, 130 Stat 376, "amended the Economic Espionage Act to create a federal cause of action for trade secret misappropriation." Michelle Evans, *Plausibility Under the Defend Trade Secrets Act*, 16 J. MARSHALL REV. INTELL. PROP. L. 188, 189 (2017). Now, 18 U.S.C. § 1836 allows trade-secret owners to pursue civil actions in federal court for the misappropriation of a trade secret, provided the trade secret at issue "is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

The Defend Trade Secrets Act defines *trade secret* as

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). This definition makes clear that "[n]ot all business knowledge is a trade secret[.]" *U.S. v. Howley,* 707 F.3d 575, 579 (6th Cir. 2013) (applying the Economic Espionage Act). Rather, "[i]nformation is a 'trade secret' only if its owner has taken 'reasonable measures' to keep it secret and the 'information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.'" *Id.* at 579.

The candidates for "trade secret," according to the Credit Union's proposed Second Amended Complaint, are:

- A list of Credit Union board members and employees for 2011-2012. (proposed Second Amended Complaint, Doc. 27-1, PgID 625, ¶14);

- A report submitted to the State of Michigan Credit Union Examiner, "which includes the names and account information of several borrowers." (*Id.,* PgID 626-627, ¶20).

- A "copy of a confidential Bankruptcy Report of [the Credit Union] containing the names, account numbers and balances of credit union members[.]"(*Id.,* Doc. 27-1, PgID 627, ¶23).

- A "Management Action Report which references the private and confidential records" of Credit Union customers. (*Id.,* PgID 628, ¶24);

- A loan workout report. (*Id.,* PgID 628, ¶25);

- An expense report "related to numerous credit union members." (*Id.,* PgID 628, ¶26);

- "Confidential information regarding approximately 19 credit union members." (*Id.,* PgID 629, ¶27);

- A "confidential loan-to-value report … containing the private and confidential account information of approximately 400 credit union member accounts." (*Id.,* PgID 629, ¶28) (emphasis removed);

- A "confidential Document of Resolution regarding regulatory matters/reviews." (*Id.,* PgID 630, ¶29).

- A "confidential Business Loan Log … containing the amounts, terms, names of 41 customers and other confidential information." (*Id.,* PgID 630, ¶30);

9

- A "confidential real estate foreclosure log." (*Id.,* PgID 630, ¶31)

- A "confidential log for consumer loans." (*Id.,* PgID 630--631, ¶32).

- A "confidential report of Plaintiff's." (*Id.,* PgID 631, ¶33); and

- A "confidential charge off report regarding references to several hundred accounts." (*Id.,* PgID 631, ¶34).

- A "confidential business loan report." (*Id.,* PgID 632, ¶36).

Assuming that all of these documents are confidential (even though some of them are part of the public record in the Macomb County action), none of these documents satisfies the Act's definition of *trade secret.* That's because none of these documents contains information that "'derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.'" *Howley,* 707 F.3d at 579 (quoting 18 U.S.C. § 1839).

The only specific allegation in the complaint about these documents' economic value (other than a paragraph quoting 18 U.S.C. § 1839(3)(B)) is the Credit Union's assertion that keeping these documents secret is important *to the Credit Union:*

> Plaintiff's trade secrets are highly valuable *to it,* as confidentiality of the records must remain private

10

pursuant to bank secrecy laws and state and federal civil and criminal statutes.

(Proposed Second Amended Complaint, Doc. 27-1, PgID 636, ¶55) (emphasis added). Value to the Credit Union isn't enough. A trade secret under the Defend Trade Secrets Act must have "*independent*" economic value. *See* 18 U.S.C. § 1839(3)(B). Alleging that the information is valuable only to the extent the Credit Union keeps it confidential does not establish that the information has economic value *to others*. And that means the information does not have "independent" economic value. *Id.*

Indeed, the Credit Union doesn't allege that its competitors could take advantage of these lists to solicit its customers. *Cf. Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1089 (E.D. Cal. 2012) (holding that a customer list had independent economic value under a state law similar to the Defend Trade Secrets Act where the list "allow[ed] the competitor to solicit both more selectively and more effectively without having to expend the effort to compile the data").

The Credit Union's false allegation that the defendants "have … sought to … extort money or concessions and/or items of value from Plaintiff" doesn't satisfy the "independent economic value" requirement.

11

(Proposed Amended Complaint, Doc. 27, PgID 634, ¶45). Demanding payment for information that is valuable only to the plaintiff does not establish *independent* economic value; the value still belongs to the plaintiff alone.

Even assuming the Credit Union has a duty to keep all of the documents at issue confidential (Proposed Second Amended Complaint, Doc. 27-1, PgID 636, ¶55), that makes the information secret—but not a *trade secret* as defined in 18 U.S.C. § 1839. Therefore, the Credit Union's proposed claim under the Defend Trade Secrets Act is futile.

## Argument 2: Intent

**The Defend Trade Secrets Act applies only when, among other things, a defendant acts with the intent to convert a trade secret to the economic benefit of someone other than the trade secret's owner. The proposed claim does not allege that the Seikaly Parties acted with the intent to convert the documents at issue to someone's economic benefit. Therefore, the Defend Trade Secrets Act claim is futile.**

Just as not all business knowledge is a trade secret, not every appropriation of a trade secret is actionable under the Defend Trade Secrets Act. The Act provides for a civil action and criminal sanctions

12

only against those act with the intent to derive an economic benefit

from someone else's trade secrets:

> (a) Whoever, with *intent to convert a trade secret,* that is related to a product or service used in or intended for use in interstate or foreign commerce, *to the economic benefit of anyone other than the owner thereof,* and intending or knowing that the offense will, injure any owner of that trade secret, knowingly--
>
> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
>
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;
>
> (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
>
> (4) attempts to commit any offense described in paragraphs (1) through (3); or
>
> (5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy…[.]

18 U.S.C. § 1832(a) (emphasis added).

The Defend Trade Secrets Act couldn't apply to Shibanov's

accessing the Credit Union's documents because, according to the

Credit Union's proposed amended complaint, Shibanov did so in 2013.

13

(*See, e.g.,* Proposed Second Amended Complaint, Doc. 27-1, PgID 630-631). The Defend Trade Secrets Act applies only to misappropriation that occurs after its effective date of May 11, 2016. (**Exhibit 1**, 130 Stat. 382, 18 USC 1833 note). *See also PEO Experts CA, Inc. v. Engstrom*, No. 217CV00318KJMCKD, 2017 WL 4181130, at *5 (E.D. Cal. Sept. 21, 2017) ("The Federal Act applies to any misappropriation that occurs on or after May 11, 2016.") (citing 18 U.S.C. § 1833 note).

Presumably, then, the Credit Union proposes to state a claim based on the defendants receiving or possessing its documents after May 2016. 18 U.S.C. §1832(a)(3).[1] To state a claim based on post-May 2016 possession, the Credit Union must allege that the defendants received or possessed those documents with the intent to convert the Credit Union's trade secrets *to someone's economic benefit.* 18 U.S.C. § 1832(a).

This critical allegation is missing from the Credit Union's complaint. It alleges that the Seikaly Parties received the Credit

---

[1] This brief assumes for argument's sake that the Seikaly Parties actually possess all of the documents listed in the Credit Union's proposed complaint. In fact, the Seikaly Parties believe they do *not* have all of these documents, and some descriptions in the Credit Union's complaint are too vague to provide much help.

Union's confidential documents with the knowledge that Shibanov supposedly removed them unlawfully. (Proposed Second Amended Complaint, Doc. 27-1, PgID 633, ¶40). But it doesn't allege that the Seikaly Parties intended to convert the Credit Union's trade secrets to someone's economic benefit.

To be sure, the Credit Union alleges that the Seikaly Parties "*profited* from engaging in their attempt to prevent the return of Plaintiff's private and confidential documents." (Second Amended Complaint, Doc. 27-1, PgID 634, ¶¶44-45) (emphasis added). It cites the Seikaly Parties' recovery of "attorney fees for their work in opposing the return of the documents" as support for this claim. (*Id.,* ¶45). That's a reference to a Macomb County Circuit Court order granting the Lidia Shibanov case-evaluation sanctions under Michigan Court Rule 2.403. That order included compensation for Shibanov's attorney fees for defending against the Credit Union's various state-court motions about their documents. (*Order Awarding Defendants Lidia Shibanov and Ihor Holyk Actual Attorney Fees and Costs Pursuant to MCR 2.403(O)*, Doc. 28-11, PgID 860).

15

Calling case-evaluation sanctions "profit" is a stretch. Even if that characterization fit, the Defend Trade Secrets Act applies only when the defendant *intended* obtain or possess the trade secret for someone's economic benefit. *See* 18 U.S.C. § 1832(a). The Credit Union doesn't allege that the Seikaly Parties *intended* to profit.

The Credit Union's failure to plead that the Seikaly Parties intended to profit from its supposed trade secrets isn't just a problem of form. It goes to the core problem with the Credit Union's claim. Just as its initial complaint attempted to cram its state-law claims into a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, its current complaint is attempting to squeeze its dispute with the Seikaly Parties into another ill-fitting suit. In both instances, the Credit Union went to that effort because it wants to take its dispute with the Seikaly Parties from state court (where it lost) to this Court (where it hopes for a different outcome).

So the Credit Union's claim under the Defend Trade Secrets Act isn't just futile; it's another misplaced attempt to turn its state-law discovery dispute into a federal lawsuit. The Court should therefore deny the Credit Union's motion to amend.

# Conclusion

For the foregoing reasons, this Court should deny the Credit Union's Motion for Leave to Amend and dismiss all claims against the Seikaly Parties for the reasons stated in the Seikaly Parties' Supplemental Brief (Doc. 28).

Respectfully submitted,

Collins Einhorn Farrell PC

By: ___*/s/ Trent B. Collier*___
Michael J. Sullivan (P35599)
Trent B. Collier (P66448)
Kellie Howard Goudy (P69009)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Trent.Collier@ceflawyers.com
*Attorney for Defendants William Seikaly and Seikaly, Stewart & Bennett, P.C.*

Dated: October 9, 2017

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings this 9th day of October, 2017.

By:   _____ U.S. Mail / Email
        _____ Hand Delivered
        _____ Facsimile
    X    E-Filing

/s/ Susan M. Wagner
Susan M. Wagner