# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

UKRAINIAN FUTURE CREDIT UNION,
a state chartered credit union,

     Plaintiff,

v.

WILLIAM R. SEIKALY; JEFFREY T.
STEWART; LARRY W. BENNETT;
LIDIA SHIBANOV; JOHN/JANE DOE;
SEIKALY, STEWART & BENNETT, P.C.,
A Michigan professional corporation,

     Defendants.

Case No. 2:17-CV-11483-MEL
Hon. Mathew F. Leitman

## LIDIA SHIBANOV'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND BRIEF IN SUPPORT

Lidia Shibanov states as follows for her Opposition to Plaintiff's Motion for

Leave to File Second Amended Complaint and Brief in Support:

### RESPONSE TO MOTION

1.    Ms. Shibanov admits these allegations.

2.    Ms. Shibanov denies these allegations.

3.    Ms. Shibanov admits these allegations.

4.    Ms. Shibanov admits these allegations.

5.    Ms. Shibanov admits that the parties have not initiated discovery and denies that leave to amend is warranted.

6.    Ms. Shibanov admits Plaintiff seeks to add a claim under the DTSA but denies the remaining allegations.

7.    Ms. Shibanov admits that Plaintiff seeks to add a claim for breach of contract but denies the remaining allegations.

8.    Ms. Shibanov admits that the parties have not initiated discovery and denies that leave to amend is warranted.

9.    Ms. Shibanov admits these allegations.

10.    Ms. Shibanov admits these allegations.

WHEREFORE, Ms. Shibanov respectfully asks the Court to deny Plaintiff's motion.

2070759 v1

## BRIEF IN SUPPORT

***Issues presented:***

1. Are the proposed claims barred by the doctrine of *res judicata* and

   Michigan's rule against claims splitting?

2. Do the proposed claims state a cause of action?

2070759 v1

***Controlling authority:***

*Yuhaz v. Brush Wellman, Inc.,* 341 F.3d 559, 569 (6th Cir. 2003)

*Adair v. State,* 470 Mich 105, 123 (2004)

*HTC Global Services, Inc. v. HG Detroit Consulting LLC,* Case No. 316301, 2014

   WL 3794478 (Mich. App. July 31, 2014).

*U.S. v. Howley,* 707 F.3d 575, 579 (6th Cir. 2013)

2070759 v1

4

Ukrainian Future Credit Union ("UFCU") sued its former employee Lidia Shibanov for fraud and breach of her alleged fiduciary duties in Macomb County Circuit Court ("State Court Case"). Ms. Shibanov was granted both summary disposition and mediation sanctions against UFCU in that case. In the course of that litigation, UFCU responded dishonestly to several discovery requests, and Ms. Shibanov's counsel in that case produced documents that demonstrated UFCU's false discovery answers. UFCU fought vociferously against Ms. Shibanov's counsel's use of those documents in the State Court Case by, *inter alia,* seeking to disqualify her attorney and demanding the return of all copies of the records. UFCU's efforts failed.

UFCU has filed two complaints in this Court attempting to state a claim for damages it incurred as a result of its own improper litigation tactics in the State Court Case. It now seeks leave to file a third complaint, alleging violations of yet another federal statute and for breach of a few employment policies. The proposed new claims are barred by the judgment entered against UFCU in the State Court Case and otherwise fail to state a claim. Leave to amend therefore must be denied.

## I. Facts alleged in Proposed Second Amended Complaint.

Ms. Shibanov is a former employee of UFCU whom UFCU sued in 2015 for, *inter alia,* breaching her alleged fiduciary duties to UFCU in connection with

2070759 v1

the processing of the application of a commercial loan made by UFCU that had gone into default.  *See* Proposed Second Amended Complaint ("PSAC") at ¶6, 12. Ms. Shibanov was granted summary disposition in the State Court Case on all but one claim on September 2, 2016. On November 21, 2016, the state court dismissed all claims against Mr. Shibanov and entered a final order dismissing the State Court Case with prejudice.  *See* November 21, 2016 order, attached as Exhibit 1. UFCU appealed the November 21, 2016 Order and the appeal remains pending.

In defending herself in the State Court Case against UFCU's false allegations concerning her role in extending the loan, Ms. Shibanov is alleged to have provided her counsel with documents to which she had access while employed by UFCU.  *See* PSAC at ¶¶ 18, 20.  Ms. Shibanov's counsel allegedly filed these documents in the State Court Action without redacting certain confidential information from the documents.  *See* PSAC at ¶¶19 – 21.  UFCU sought the return of the documents and various sanctions against Ms. Shibanov and her counsel in connection with the documents in the State Court Case, but its efforts were rebuffed because the state court determined that the documents were sought in discovery.  *See* Transcript of October 31, 2016 hearing at p. 9, Dkt. 7-6, PgID 65.

2070759 v1

6

UFCU seeks to amend its patently deficient First Amended Complaint to include claims against Ms. Shibanov for violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1832 – 1839 and for breach of contract.   Because allowing UFCU to plead these claims would be futile, leave to amend must be denied.

## II.   <u>Argument.</u>

### A. Legal standard.

Leave to amend should be denied when the amendment would be futile. *Yuhaz v. Brush Wellman, Inc.,* 341 F.3d 559, 569 (6th Cir. 2003).  If the proposed pleading is barred by the application of *res judicata,* then the amendment is futile and should not be allowed.  *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 572-73 (6th Cir. 2008).  Further, a proposed amended pleading is futile if it fails to state a claim.  *Thiokol Corp. v. Dep't of Treasury,* 987 F. 2d 376,  383 (6th Cir. 1993).

### B. The proposed new claims against Ms. Shibanov are barred by the doctrine of *res judicata* because they were or should have been brought in the State Court Case.

The Full Faith and Credit Act requires federal courts to give the same preclusive effect to a state court judgment that a court of the state in which the judgment was rendered would accord the judgment.  *See* 28 U.S.C. §1738; *Migra*

2070759 v1

*v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n.1 (1984); *Heyliger v. State Univ. and Comm. College Sys. of Tenn.,* 126 F.3d 849, 851 (6th Cir. 1997). A federal court looks to the law of the state where the judgment was issued to determine the extent of that judgment's preclusive effect on the claims pending before federal court. *Hayliger,* 126 F.3d at 851 – 52.

Under Michigan law, the doctrine of *res judicata* bars a second, subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Washington v. Sinai Hosp. of Greater Detroit,* 478 Mich 412, 418 (2007). An order pending on appeal is a final order for purposes of *res judicata. City of Troy Bldg Inspector v. Hershberger,* 27 Mich App 123, 127 (1970). In addition, Michigan courts construe the doctrine as applying both to claims actually raised in the prior action and to every claim arising out of the same transaction which the parties, exercising reasonable diligence, could have raised but did not. *Adair v. State,* 470 Mich 105, 123 (2004); *Sprague v. Buhagiar,* 213 Mich App 310, 313 (1995).

## 1.  The State Court Case was decided on the merits.

UFCU had a full and fair opportunity to litigate the State Court Case and lost that case on a fully briefed, post-discovery motion for summary disposition. The

2070759 v1

judge that granted the motion did so in a lengthy and detailed opinion. *See* September 2, 2016 Opinion, attached as Exhibit 2. A summary disposition ruling is the "procedural equivalent of a trial on the merits that bars relitigation on principles of *res judicata." Mable Cleary Trust v. Edward-Marlah Muzyl Trust,* 262 Mich App 485, 510 (2004). The first prong of the *res judicata* test has clearly been met.

### 2. Both actions involve the same parties or their privies.

Both UFCU and Ms. Shibanov were parties to the State Court Case and both are parties to the instant case. The addition of new parties to the second case does not bar the application of the doctrine as long as "both the party asserting *res judicata* and the party against whom it is being asserted were parties to the prior action." *Barnes v. Ormond,* Case No. 323134, 2015 WL 9257767 (Mich App. December 17, 2015) at *2, n. 2. The second element of *res judicata* is also present.

### 3. The claims pending before this Court were or could have been brought in the State Court Case.

As for the final element, Michigan applies the "same transaction" test to determine whether a subsequent case is barred by a prior adjudication. *Adair,* 470 Mich at 124. Whether two claims arise from the same transaction "is to be determined pragmatically, by considering whether the facts are related in *time,*

2070759 v1

9

*space, origin or motivation* and whether they form a convenient trial unit." *Adiar,* 470 Mich at 125, citations and internal quotations omitted; emphasis added by cited case. "If the new claim or claims arise from the same group of operative facts as the previously litigated claim or claims, even if there are variations in the evidence needed to support the theories of recovery, we will treat the claims as the same and *res judicata* will apply." *Adair,* 470 Mich at 124 – 125. When the facts giving rise to the claims asserted in the second case were learned in the first case, *res judicata* applies to bar the second case. *HTC Global Services, Inc. v. HG Detroit Consulting LLC,* Case No. 316301, 2014 WL 3794478 (Mich. App. July 31, 2014).

There is no doubt that the proposed could have been brought in the State Court Case. In the prior case, UFCU brought various causes of action against Ms. Shibanov arising from actions UFCU alleged she took in her capacity as a UFCU employee and the proposed new claims are also based on conduct Ms. Shibanov allegedly engaged in while she was an employee. *See* PSAC at ¶¶14; 23 -34.

The documents at issue were actually used by Ms. Shibanov to defend herself in the State Court Case. *See* PSAC at ¶¶17 – 21; 35. Ms. Shibanov's counsel's production and use of the documents caused UFCU to prosecute several motions in the State Court Case, including a motion to disqualify Ms. Shibanov's

2070759 v1

10

counsel.   The state court denied the motions, finding that UFCU should have produced the documents at issue during discovery.   *See* 10/31/16 Tran. at p. 9, Dkt.7-6, PgID 65.   In fact, UFCU was admonished in the State Court Case for its repeated efforts to have the state court redress its alleged injuries arising from Ms. Shibanov's possession of the documents:

> [I]'ve told you I'm not going to be the public forum for your allegations regarding the documents, the disqualification, the unethical behavior.   I have had it up to my eyeballs with that.   I've had it up to my eyeballs that it is contained in every single brief and in every single motion and it takes me an hour and a half to figure out what it is you want from your continual motions, other than to just continually place in the public what you believe [Ms. Shibanov's counsel] is responsible or guilty of, and I'm not going to hear it anymore.

*See* 10/31/16 Tran. at p. 12, Dkt.7-6, PgID 66.

UFCU filed an application for leave to appeal that interlocutory decision and UFCU admitted to this Court that these actions in the state courts were "an effort to have the documents identified and returned pursuant to the Michigan Court Rules and relevant ethical rules[.]"   *See* UFCU's Motion for Preliminary Injunction, Dkt#7, PgID 46.   The Michigan Court of Appeals denied UFCU's application.

UFCU also appealed the state court's order granting Ms. Shibanov's motion for summary disposition.   In that pending appeal, UFCU raised the documents Ms. Shibanov emailed to herself and argued injury from the failure to return the

2070759 v1

11

documents to UFCU.  *See* UFCU Brief on Appeal, at p. 12; 14, Dkt.#11-9, PgID 415, 417.   These actions by UFCU demonstrate that it was aware of these factual allegations during the pendency of the State Court Case.  This triggered a duty to supplement its complaint to assert the new claims "or have them barred by *res judicata." Adair,* 470 Mich at 125.

The Michigan Court of Appeals addressed these very facts in *HTC Global.* In that case, the plaintiff sued a former employee and her new employer, Halo, in separate suits for breach of a restrictive covenant.   In discovery, the plaintiff learned that Halo played a significant role in inducing the former employee to breach her employment agreement.   After the first two cases were settled and dismissed, the plaintiff fled a second suit against Halo, contending that it only learned of Halo's role in inducing the former employer to leave during discovery in the first cases.   The trial court found this dispositive of the issue of whether the new claims "could have" been brought in the first case and dismissed them as barred by *res judicata. Id* at *5.

The Michigan Court of Appeals agreed, noting:

> A claim may be resolved in an action even if it is unknown at the time of filing the initial complaint. A plaintiff learning additional information during discovery may seek to amend its complaint and '[l]eave shall be freely given when justice so requires.' MCR 2.118(A)(2).

*Id.* at * 6.

Here, there is no doubt that UFCU knew of the documents at issue in this case while it prosecuted the State Court Case. UFCU litigated for the documents' return and asserted injuries arising from Ms. Shibanov's use of the documents in the prior case. UFCU sued Ms. Shibanov for breach of fiduciary duty as an employee in that case, and there is no reason it could not have included a claim for breach of contract or violates of the DTSA. While UFCU may not have pled the instant theories in the state court case, there is no doubt that the instant "claims were discovered before [the state court case] reached final judgment, and could have been raised in that lawsuit." *HTC Global* at * 7. The new theories and the old theories arise in the same "time and space," and therefore arise from the same "transaction" under *Adair*. *Adiar,* 470 Mich at 125.

Each of the elements for the application of *res judicata* is present in the proposed new claims. UFCU sued Ms. Shibanov for a series of actions arising from her employment at UFCU and, during that litigation, UFCU learned of additional potential causes of action that relate in time, space and origin to Ms. Shibanov's employment at UFCU. The new claims are barred, as a matter of Michigan law.

2070759 v1

13

### 4. Michigan's compulsory joinder rule bars the proposed claims.

The new claims are also barred under Michigan's compulsory joinder rule which requires a plaintiff to bring in one proceeding all claims it has against a defendant arising from the same "transaction or occurrence." *See* MCR 2.203(A). MCR 2.203(A) is also known as the "rule against splitting causes of actions." *See Hughes v. Medical Ancillary Services, Inc.,* 88 Mich App 395, 397 – 399 (1979). (discussing prior GER. 1963, 203.1, on which MCR 2.203(A) was based). The rule is "grounded on the same general policy considerations as the doctrine of *res judicata . . .." Rogers v. Colonia Federal Savings & Loan Ass'n of Grosee Pointe Woods,* 405 Mich 607, 618 (1979). "[S]plitting a cause of action' has been defined as litigating 'piecemeal,' *i.e.,* in separate suits, various claims of the pleader against the opposing party arising out of the same transaction or occurrence." *Lorencz v. Ford Motor Co.,* 187 Mich App 63, 74 (1991), *rev;d on other grounds,* 439 Mich 370 (1992).

As stated above, there is no question that the proposed new claims arose from the matters litigated in the State Court Case and that UFCU was required under MCR 2.302(A) to assert those claims in that case. *Adiar,* 470 Mich at 125. Having filed to do so, it is barred from asserting the claims here.

C.     **The Proposed New Claims would not Survive A Motion to Dismiss.**

In addition to being barred under *res judicata,* the proposed new claims fail to state a cause of action.

### 1.  UFCU fails to state a claim under the DTSA.

DTSA "amended the Economic Espionage Act to create a federal cause of action for trade secret misappropriation." Michelle Evans, *Plausibility Under the Defend Trade Secrets Act*, 16 J. MARSHALL REV. INTELL. PROP. L. 188, 189 (2017). Now, 18 U.S.C. § 1836 allows trade-secret owners to pursue civil actions in federal court for the misappropriation of a trade secret, provided the trade secret at issue "is related to a product or service use in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

The DTSA defines trade secret as information recorded in any form that:

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3). This definition makes clear that "[n]ot all business knowledge is a trade secret[.]" *U.S. v. Howley,* 707 F.3d 575, 579 (6th Cir. 2013)

(applying the Economic Espionage Act). Rather, "[i]nformation is a 'trade secret' only if its owner has taken 'reasonable measures' to keep it secret and the 'information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.'" *Id.* at 579.

The candidates for "trade secret," according to the PSAC are:

- A list of UFCU board members and employees for 2011-2012. (proposed Second Amended Complaint, Doc. 27-1, PgID 625, ¶14);

- A report submitted to the State of Michigan UFCU Examiner, "which includes the names and account information of several borrowers." (*Id.,* PgID 626-627, ¶20).

- A "copy of a confidential Bankruptcy Report of [the UFCU] containing the names, account numbers and balances of UFCU members[.]"(*Id.,* Doc. 27-1, PgID 627, ¶23).

- A "Management Action Report which references the private and confidential records" of UFCU customers. (*Id.,* PgID 628, ¶24);

- A loan workout report. (*Id.,* PgID 628, ¶25);

- An expense report "related to numerous UFCU members." (*Id.,* PgID 628, ¶26);

- "Confidential information regarding approximately 19 UFCU members." (*Id.,* PgID 629, ¶27);

- A "confidential loan-to-value report … containing the private and confidential account information of approximately 400 UFCU member accounts." (*Id.,* PgID 629, ¶28) (emphasis removed);

- A "confidential Document of Resolution regarding regulatory matters/reviews." (*Id.,* PgID 630, ¶29).

- A "confidential Business Loan Log ... containing the amounts, terms, names of 41 customers and other confidential information." (*Id.,* PgID 630, ¶30);

- A "confidential real estate foreclosure log." (*Id.,* PgID 630, ¶31)

- A "confidential log for consumer loans." (*Id.,* PgID 630--631, ¶32).

- A "confidential report of Plaintiff's." (*Id.,* PgID 631, ¶33); and

- A "confidential charge off report regarding references to several hundred accounts." (*Id.,* PgID 631, ¶34).

- A "confidential business loan report." (*Id.,* PgID 632, ¶36).

None of these documents satisfies DTSA' s definition of trade secret.

First, UFCU makes no allegations that suggests it took "reasonable measures" to keep the information secret. UFCU attached to its PSAC a "policy" concerning e-commerce that states all emails sent and received through UFCU's server are UFCU's "property." *See* PSAC at Ex. 2, Dkt. 27-3, Pg ID 654. UFCU also relies on a policy that prohibits fraudulent conduct by its employees. *See* PSAC at Ex. 3, Dkt. 27 – 4, PgID 656. Neither of these policies is targeted at protecting the documents at issue and neither is remotely similar to the protections at issue in *Xoran Holdings, LLC v. Luick,* Case No. 16-13703, 2017 WL 4039718 (E.D. Mich. September 13, 2017), the authority UFCU relies in to support its claim under the DTSA.

2070759 v1

17

In *Xoran,* the employer had a policy dedicated to the protection of confidential information. The policy defined confidential information; it expressly prohibited the use of any of that information for the employees' benefit; and required employees to return or destroy all confidential information upon the termination of their employment. *Xoran,* 2017 WL 4039718 at **2, 6. Here, UFCU has no policy dedicating to protecting its alleged trade secrets; it just has general policies warning employees that company emails belong to UFCU and to be honest in their professional dealings. These allegations are simply not enough to support an inference that UFCU took "reasonable measures" to protect the confidentiality of the specific documents at issue in the proposed DTSA claim.

Second, none of the documents listed above contains information that "'derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.'" *Howley,* 707 F.3d at 579 (quoting 18 U.S.C. § 1839). Indeed, the only specific allegation about these documents' economic value is the assertion that keeping these documents secret is important to UFCU. *See* PSAC at ¶55. A trade secret under DTSA must have "independent" economic value. *See* 18 U.S.C. § 1839(3)(B). For example, UFCU does not contend that its competitors could take advantage of the documents to solicit UFCU's customers. *Cf. Pyro*

2070759 v1

18

*Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1089 (E.D. Cal. 2012) (holding that a customer list had independent economic value under a state law similar to the Defend Trade Secrets Act where the list "allow[ed] the competitor to solicit both more selectively and more effectively without having to expend the effort to compile the data"). Alleging that the information is valuable to UFCU does not mean that the document have the requisite "independent" economic value. *Id.*

Finally, UFCU does not allege facts that demonstrate Ms. Shibanov acted with the requisite intent.  DTSA provides for a civil remedy against those persons who "with intent to convert a trade secret" in order to generate an "economic benefit of anyone other than the owner thereof. . .." 18 U.S.C. § 1832(a) (emphasis added).  There are no allegations of anyone obtaining any economic benefit from the documents.  UFCU admits that the sole use of the documents was in connection with the defense of the State Court Case.  *See* PSAC at ¶¶ 21, 22, 35.

The PSAC contains only conclusory allegations that mimic the text of the DTSA.  The Court cannot take these allegations are true in deciding whether UFCU has stated a claim.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the court is "not bound to accept as true a

2070759 v1

19

legal conclusion couched as a factual allegation"). Leave to amend the First Amended Complaint to include the proposed DTSA claim would be futile.

## 2. Breach of Contract.

Count X of the PSAC asserts as a claim for breach of contract, Ms. Shibanov's alleged violations of certain employment policies. Under Michigan law, a valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v. Liquid Mfg,* 499 Mich 491, 508 (2016). "Contracts necessarily contain promises: a contract may consist of a mutual exchange of promises ... or the performance of a service in exchange for a promise." *ATF Michigan v. Michigan,* 497 Mich 197, 235 (2015).

Here, UFCU claims that Exhibits 2 and 3 to the PSAC were part of Ms. Shibanov's "employment agreement." *See* PSAC at ¶109. That agreement is not attached or even described in the PSAC, however. The two exhibits themselves do not require UFCU to undertake any obligation and fail as a matter of law to satisfy the "mutuality" element of a claim for breach of contract. As with proposed Count I, proposed Count X fails to state a claim and leave to pled this claim is futile.

## III.   <u>Conclusion</u>.

Ms. Shibanov is alleged only to have used documents of UFCU to defend herself in litigation filed against her by UFCU.   This is not a breach of any contract, let alone a violation of DTSA.   UFCU is attempting to fit the "square peg" of its costly consequences of its poor litigation strategy employed in the State Court Case into the "round hole" of a federal claim.   Its efforts fail because the facts simply do not fit.   Leave to amend must be denied, accordingly.

Respectfully submitted,


*/s/ Kathleen H. Klaus*
Kathleen H. Klaus
MADDIN, HAUSER, ROTH & HELLER, P.C.
*Attorney for Lidia Shibanov*
28400 Northwestern Hwy, 3rd Floor
Southfield, MI 48034
(248) 359-7520
P67207

Dated: October 10, 2017

2070759 v1

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2017 I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case.

/s/ Kathleen H. Klaus
Kathleen H. Klaus (P67207)
Maddin, Hauser, Roth & Heller, P.C.
Attorneys for *Lidia Shibanov*
28400 Northwestern Highway
2nd Floor
Southfield, MI  48034
(248) 359-7520
kklaus@maddinhauser.com
Attorney Bar No. P67207

DATED: October 10, 2017

2070759 v1