UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UKRAINIAN FUTURE CREDIT UNION,

     Plaintiff,                    Case No. 17-cv-11483
                                        Hon. Matthew F. Leitman

v.

WILLIAM R. SEIKALY, *et al.*,

     Defendants.

_____/

**OPINION AND ORDER (1) GRANTING IN PART DEFENDANT
SHIBANOV'S MOTION TO DISMISS (ECF #32), (2) DISMISSING
COMPUTER FRAUD AND ABUSE ACT CLAIM AGAINST DEFENDANT
SHIBANOV WITH PREJUDICE, (3) DISMISSING ALL OTHER CLAIMS
IN FIRST AMENDED COMPLAINT WITHOUT PREJUDICE, (4)
DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE ITS
PROPOSED SECOND AMENDED COMPLAINT (ECF #27), (5) DENYING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF #7), (6)
DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND/OR PRELIMINARY INJUNCTION (ECF #38), AND (7)
TERMINATING AS MOOT THE MOTION TO DISMISS BY
DEFENDANTS SEIKALY AND SEIKALY, STEWART & BENNETT, P.C.
(ECF #9)**

In 2015, Plaintiff Ukrainian Future Credit Union (the "Credit Union") sued its

former employee, Defendant Lidia Shibanov, in state court. In that action, the Credit

Union alleged that Shibanov improperly approved certain loan transactions.

Defendants William R. Seikaly, Jeffrey T. Stewart, Larry W. Bennett, and their law

firm Seikaly, Stewart & Bennett, P.C. (together, the "Seikaly Defendants")

represented Shibanov in the state-court action. During that litigation, the Credit

1

Union complained that the Seikaly Defendants and Shibanov wrongfully used documents and information that had been improperly obtained from the Credit Union's files and/or computers. However, the state courts repeatedly declined to grant the full relief sought by the Credit Union based upon those allegations. So the Credit Union decided to take its complaints regarding its documents and information to a new forum – this Court.

The Credit Union invokes this Court's federal-question jurisdiction. Its First Amended Complaint asserts a single federal claim (against Shibanov alone) for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"). But the Credit Union's allegations do not state a viable CFAA claim. Therefore, the Court dismisses the Credit Union's CFAA claim with prejudice. The Credit Union's First Amended Complaint also asserts a number of state-law claims against all of the Defendants. The Court declines to exercise supplemental jurisdiction over those claims.

In an effort to salvage federal subject-matter jurisdiction, the Credit Union has moved for leave to file a Second Amended Complaint that adds a claim under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832-1839 (the "DTSA"). The Court will not allow the Credit Union to file its proposed amendment because it is futile.

Finally, because the Court is dismissing all of the claims against the Defendants and is denying leave to amend, the Court will not grant either the Credit

Union's motion for preliminary injunction or its motion for temporary restraining order and/or preliminary injunction. The Court will also terminate as moot a motion to dismiss that some of the Defendants directed toward the original Complaint.

# I

## A[1]

The Credit Union is a state-chartered credit union. (*See* First Am. Compl. at ¶5, ECF #12 at Pg. ID 439-40.) Its principal office is located in Warren, Michigan. (*See id.*)

Until late 2012, Shibanov worked full-time for the Credit Union as a loan officer. (*See id.* at ¶¶ 6, 12, Pg. ID 440-41.) Thereafter, Shibanov worked remotely for the Credit Union on a part-time basis. (*See id.* at ¶12, Pg. ID 441.) Her employment with the Credit Union ended on February 1, 2013. (*See id.*)

While employed at the Credit Union, Shibanov had access to customer, employment, and regulatory examination records that were stored on her office computer and on the Credit Union's computer server. (*See id.* at ¶13, Pg. ID 441-42.) In addition, as a Credit Union employee, Shibanov was subject to the Credit Union's E-Commerce Policies and Procedures and to the Credit Union's Employee

---

[1] The facts recited in sub-sections A and B below are taken from the Credit Union's First Amended Complaint and are presumed to be true for purposes of this Opinion and Order. The procedural history recited in sub-section C below is offered for background purposes only and is not the basis of the Court's decision to dismiss this action.

Fraud Policy. (*See id.* at ¶¶ 15-16, Pg. ID 442.) (The Court provides additional details concerning these policies below.)

In early 2013, without the Credit Union's knowledge or consent, Shibanov used her computer to obtain documents that were stored on the Credit Union's computer system. More specifically, on January 5, 2013, Shibanov accessed that system and emailed to her personal email address a "confidential Business Loan Log of [the Credit Union] containing the amounts, terms, names of 41 customers and other confidential information." (*Id.* at ¶30, Pg. ID 447.) In addition, between January 29, 2013, at 11:30 p.m. and January 30, 2013, at 1:00 a.m., Shibanov again accessed the Credit Union's computer system and emailed to her personal email address several more of the Credit Union's confidential documents, including:

- "the 2011-2012 Roster of Ukrainian Future Credit Union which includes the full social security numbers and account numbers of all 37 board members and employees of the Ukrainian Future Credit Union" (*id.* at ¶14, Pg. ID 442);

- "a confidential Bankruptcy Report of [the Credit Union] containing the names, account numbers and balances of credit union members" (*id.* at ¶23, Pg. ID 444);

- "a confidential credit union Management Action Report . . . which references the private and confidential records of approximately 36 member accounts" (*id.* at ¶24, Pg. ID 444-45);

- "a confidential loan workout report" (*id.* at ¶25, Pg. ID 445);

- "a confidential expense report related to numerous credit union members" (*id.* at ¶26, Pg. ID 445);

- "a copy of confidential information regarding approximately 19 credit union members" (*id.* at ¶27, Pg. ID 446);

- "the confidential loan-to-value report of [the Credit Union] containing the private and confidential account information of approximately *400 credit union member accounts*" (*id.* at ¶28, Pg. ID 446; emphasis original);

- "a confidential Document of Resolution regarding regulatory matters/reviews" (*id.* at ¶29, Pg. ID 446-47);

- "the confidential real estate foreclosure log of [the Credit Union]" (*id.* at ¶31, Pg. ID 447);

- "[the Credit Union's] confidential log for customer loans" (*id.* at ¶32, Pg. ID 447-48);

- "a confidential report of [the Credit Union]" (*id.* at ¶33, Pg. ID 448);

- "a confidential charge off report regarding references to several hundred accounts" (*id.* at ¶34, Pg. ID 448); and

- "[the Credit Union's] confidential business loan report" (*id.* at ¶36, Pg. ID 449).

**B**

In 2015, the Credit Union sued Shibanov, her husband, Andrii and Svitlana Garak, and others in the Macomb County Circuit Court. *See Ukrainian Future Credit Union v. Garak*, Macomb County Circuit Court Case No. 15-0524-CZ (hereinafter, the "*Garak* Litigation"). The claims in the *Garak* Litigation did not relate to Shibanov's computer access described above (of which the Credit Union was not aware at the time it filed that action). Instead, the Credit Union alleged that Shibanov had facilitated a loan for the Garaks even though she knew that the loan was really

for a different couple, Ihor and Oksana Holyk. (*See Garak* Litigation Compl., ECF #29-1.) The Seikaly Defendants represented Shibanov in the *Garak* Litigation. (*See* First Am. Compl. at ¶¶ 8-11, ECF #12 at Pg. ID 440-41.)

During the *Garak* Litigation, the Seikaly Defendants obtained from Shibanov some of the documents that Shibanov had earlier taken from the Credit Union's computer system. (*See id.* at ¶42, Pg. ID 450-51.) The Seikaly Defendants then used and disclosed several of those documents in their defense of Shibanov. (*See id.* at ¶¶ 63-64, 78, Pg. ID 454-55, 458.) For instance, on April 21, 2016, while deposing a Credit Union employee, Defendant William Seikaly ("Seikaly") referenced figures that apparently came from a charge-off report of the Credit Union. (*See id.* at ¶35, Pg. ID 448-49.) At another deposition, Seikaly used a copy of the 2011-2012 Credit Union Roster without redacting the Social Security numbers of the Credit Union employees and board members. (*See id.* ¶18, Pg. ID 443.)

Seikaly subsequently attached to court filings in the *Garak* Litigation three of the Credit Union's documents that he had obtained from Shibanov: (1) the unredacted copy of the 2011-2012 Credit Union Roster; (2) "a copy of a confidential state examination response report to . . . a State of Michigan Credit Union Examiner which includes the names and account information of several borrowers;" and (3) a "management report containing the private and confidential personal account information of several credit union members." (*Id.* at ¶¶ 19-21, Pg. ID 443-44.)

**C**

The Credit Union repeatedly complained to the state courts about the Seikaly Defendants' possession and use of its documents. For instance, during a motion hearing, the Credit Union asked the state trial court to remove from the court record the three documents identified above that Seikaly had filed. (*See* 10/17/2017 State Ct. Hearing Tr., ECF #28-4 at Pg. ID 781-83.) The trial court denied that request but ordered redactions of Social Security numbers and certain other identifying information in the documents. (*See id.* at Pg. ID 782-83; 10/17/2016 State Ct. Order, ECF #28-5.)

The Credit Union subsequently sought to disqualify the Seikaly Defendants as Shibanov's counsel based upon their use and possession of the Credit Union's documents, and the state trial court denied that request. (10/31/2016 State Ct. Hearing Tr., ECF #28-6 at Pg. ID 796.) The Credit Union then attempted to take an interlocutory appeal from that decision, and the Michigan Court of Appeals denied leave to appeal. (*See Ukranian [sic] Future Credit Union v. Garak* (Mich. Court of Appeals Case No. 335688); Court of Appeals Order, ECF #7-10.)

The state trial court later granted Shibanov's motion for summary disposition on all of the Credit Union's claims and closed the case. (*See* 11/21/2016 State Ct.

Order, ECF #28-8 at Pg. ID at 810.[2])  Shibanov then filed a motion for sanctions.  At the hearing on that motion, the Credit Union again complained that the Seikaly Defendants unlawfully obtained the documents described above. (*See* 8/4/2017 State Ct. Hearing Tr., ECF #28-10 at Pg. ID at 850-51.)  Following the hearing, the state trial court awarded Shibanov her attorneys' fees as sanctions against the Credit Union. (*See* 8/21/2017 State Ct. Order, ECF #28-11.)

Finally, the Credit Union filed a motion for reconsideration of the state trial court's order assessing sanctions. (*See* State Ct. Mot. for Reconsideration, ECF #28-12.)  The motion accused Seikaly and Shibanov of violating federal law, specifically 18 U.S.C. § 2113, by obtaining and possessing the Credit Union's documents. (*See id.* at Pg. ID 865.)  The state trial court denied that motion.

### D

The Credit Union filed its initial Complaint in this action on May 9, 2017. (*See* Compl., ECF #1.)  That Complaint named only Seikaly and his law firm as Defendants and alleged that they had accessed the Credit Union's computers or networks without authorization and had wrongfully obtained its documents and

---

[2] The Credit Union appealed that decision to the Michigan Court of Appeals.  It also asked the Court of Appeals to disqualify the Seikaly Defendants and to order them to return all of the Credit Union documents that they improperly obtained. (*See* Credit Union's State Ct. Appellant Br., ECF #28-9.)  That appeal is currently pending.

information. (*See id.* at ¶¶ 19-21, Pg. ID 6-7.)  The Complaint asserted a claim under the CFAA and claims under state law. (*See id.*)  The Complaint did not assert any claims against Shibanov.

Thereafter, the Credit Union filed a motion for a preliminary injunction. (*See* ECF #7.)  The Credit Union asked the Court to compel Seikaly and his firm to return all of the Credit Union's documents in their possession except for those documents that were properly obtained through discovery in the *Garak* Litigation. (*See* ECF #7.)  Seikaly and his law firm filed a response opposing the injunction motion. (*See* Opp. to Mot. for Prelim. Inj., ECF #11.)  They also filed a motion to dismiss the Complaint. (*See* Seikaly Mot. to Dismiss, ECF #9.)

On August 9, 2017, the Credit Union filed a First Amended Complaint. (*See* First Am. Compl., ECF #12.)  The First Amended Complaint added Shibanov as a Defendant and asserted a CFAA claim against her.  (*See id.*)  It also added Jeffrey Stewart and Larry Bennett of Seikaly's law firm as Defendants and asserted state-law claims against them for allegedly improperly obtaining the Credit Union's documents and using them in the *Garak* Litigation. (*See id.*)  The claims in the First Amended Complaint are as follows:

- Count I: Violation of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030 against Defendant Shibanov
- Count II: Statutory and Common Law Conversion against all Defendants

- Count III: Violation of the Social Security Number Privacy Act (Mich. Comp. Law § 445.81 *et seq.*) against all Defendants
- Count IV: Breach of the Identity Theft Protection Act (Mich. Comp. Law § 445.61 *et seq.*) against all Defendants
- Count V: Civil Conspiracy against all Defendants
- Count VI: Abuse of Process against all Defendants
- Count VII: Breach of Fiduciary Duty against Defendant Shibanov
- Count VIII: Injunctive Relief against all Defendants

(*See id.*)

Notably, the First Amended Complaint does not assert a CFAA claim or any other federal claim against any of the Seikaly Defendants. The only federal claim in the First Amended Complaint is the CFAA claim against Shibanov.

On September 6, 2017, the Court held a hearing on the Credit Union's motion for preliminary injunction. At the hearing, the Court *sua sponte* questioned whether it had supplemental jurisdiction provided by 28 U.S.C. § 1367(a) to hear the state-law claims against the Seikaly Defendants and, if so, whether it should exercise discretion to dismiss those claims pursuant to 28 U.S.C. § 1367(c). The Court ordered the Seikaly Defendants and the Credit Union to submit supplemental briefing addressing those questions. They later did so. (See ECF ## 28, 29.)

On September 26, 2017, the Credit Union filed a motion for leave to file a Second Amended Complaint. (*See* ECF #27.) It attached its proposed Second Amended Complaint to that motion. (*See* ECF #27-1.) The proposed Second

Amended Complaint adds a DTSA claim against all of the Defendants and a breach of contract claim against Shibanov. (*See id.*)

On October 11, 2017, Shibanov filed a motion to dismiss the Credit Union's claims against her in the First Amended Complaint. (*See* ECF #32.)  She also filed a response opposing the Credit Union's motion for leave to file its proposed Second Amended Complaint. (*See* ECF #31.)   The Seikaly Defendants likewise filed a response opposing the Credit Union's motion for leave to file its proposed Second Amended Complaint. (*See* ECF #30.)

With its earlier motion for preliminary injunction still pending before the Court, on November 19, 2017, the Credit Union filed a second motion seeking essentially the same equitable relief. (*See* ECF #38.) The Credit Union titled this second motion one for a temporary restraining order and/or preliminary injunction. (*See id.*)

## II

The Court begins with the sole federal claim asserted in the First Amended Complaint: the claim against Shibanov for violation of the CFAA.  Shibanov has moved to dismiss that claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Shibanov argues, among other things, that the Credit Union's CFAA claim fails as a matter of law because "there are no allegations from which the Court could infer that [she] acted with the intent to defraud . . . ." (Shibanov Mot. to

Dismiss, ECF #32 at Pg. ID 1018.)  The Credit Union offers no response to that argument.[3]  For the reasons explained below, the Court finds Shibanov's unrebutted argument persuasive and grants Shibanov's motion to dismiss the Credit Union's CFAA claim.

## A

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id.* (citing *Twombly*, 550 U.S. at 556).  When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true.  *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d

---

[3] In addition to attacking the sufficiency of the Credit Union's fraudulent intent allegations, Shibanov argued that she could not have acted with a fraudulent intent because she was a whistleblower. (Shibanov Mot. to Dismiss, ECF #32 at Pg. ID 1018.)  The Credit Union vigorously opposed that argument. (*See* Resp. to Shibanov Mot. to Dismiss, ECF #36 at Pg. ID 1184-85.)  But the Credit Union never addressed Shibanov's argument that the allegations in the First Amended Complaint, even if true, were insufficient to support a finding that she acted with the required intent. (*See id.*)

509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## B

Congress enacted the CFAA in order "to enhance the government's ability to prosecute computer crimes." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009). But one provision of the CFAA, 18 U.S.C. § 1030(g) ("Section 1030(g)"), also authorizes "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Here, as the Credit Union's counsel confirmed during the preliminary injunction hearing before this Court, the Credit Union brings its CFAA claim under Section 1030(g) for Shibanov's alleged violation of Section 1030(a)(4) of the Act, 18 U.S.C. § 1030(a)(4) ("Section 1030(a)(4)"). (*See* Tr. of 9/6/2017 Fed. Ct. Hearing, ECF #23 at Pg. ID 547-49; *see also* First Am. Compl. at ¶52, ECF #12 at Pg. ID 453 (parroting elements of a claim under Section 1030(a)(4)).)

13

Section 1030(a)(4) makes it unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization, or exceed[] authorized access, and by means of such conduct furthers the intended fraud and obtain[] anything of value . . . ." 18 U.S.C. § 1030(a)(4). "A [civil] claim under CFAA § 1030(a)(4) has four elements: (1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud'; and (4) as a result has 'further[ed] the intended fraud and obtain[ed] anything of value.'" *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3d Cir. 2005). The Credit Union has failed to satisfy the third element. It has not sufficiently alleged that Shibanov accessed its computer system with an intent to defraud.

In the context of Section 1030(a)(4), "intent to defraud means that the defendant acted willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for himself or causing financial loss to another." *Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016) (quotations omitted). The Credit Union's First Amended Complaint does not allege any specific facts that, if proven, would tend to establish that Shibanov accessed its computer system with an "intent to deceive or cheat," for the purpose of obtaining a "financial gain" for herself, or for the purpose of causing a

"financial loss" to the Credit Union. The Credit Union simply alleges that she emailed certain confidential documents to herself in early 2013, that she evidently did nothing with those documents for two years, and that in 2015, her attorneys used the documents when they defended her against a breach of fiduciary duty claim in the *Garak* Litigation. Those allegations do not support any inference that Shibanov acted with an intent to achieve personal financial gain or cause the Credit Union to suffer a loss when she accessed the Credit Union's computer system in 2013.[4] Indeed, the Credit Union's allegations here fall far short of the showing that has been deemed sufficient to support a finding of intent to defraud in similar cases against former employees. *See, e.g., NCMIC Finance Corp. v. Artino*, 638 F.Supp.2d 1042, 1062-63 (S.D. Iowa 2009) (finding intent to defraud under Section 1030(a)(4) where former employee accessed employer's computer, emailed employer's customer spreadsheet to himself, *and contemporaneously used the spreadsheet to divert pre-approved leases away from employer and to a different entity that paid him a commission*).

---

[4] Of course, "[b]ecause direct evidence of intent is often unavailable, intent to defraud [in the context of a claim for violation of Section 1030(a)(4)] may be established by circumstantial evidence . . . ." *Fidlar Technologies*, 810 F.3d at 1079 (quotations omitted). Here, however, the Credit Union's allegations do not provide a circumstantial indication that Shibanov acted with an intent to defraud when she accessed the Credit Union's computer system in 2013.

Instead of pleading specific facts concerning Shibanov's state of mind at the time she accessed its computer system, the Credit Union alleges generally that Shibanov "accessed [its] protected computer knowingly and with the intent to defraud . . . ." (First Am. Compl. at ¶52, ECF #12 at Pg. ID 452-53.) That conclusory allegation of fraudulent intent is not enough. "Although 'conditions of a person's mind may be alleged generally,' FED.R.CIV.P. 9(b), the plaintiff still must plead *facts* about the defendant's mental state which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) (emphasis added) (quoting *Iqbal*, 556 U.S. at 678).[5]  As explained above, the First Amended Complaint alleges no such facts.  Accordingly, the Credit Union's CFAA claim fails as a matter of law, and the Court grants Shibanov's motion to dismiss that claim.

### III

Where, as here, a federal court dismisses all of the federal claims that give rise to the Court's original subject-matter jurisdiction, the court has discretion to dismiss remaining state-law claims without prejudice. *See* 28 U.S.C. 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over a claim

---

[5] *See also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n. 4 (Fed. Cir. 2009) (collecting decisions of the Federal Courts of Appeals holding that a plaintiff "must allege sufficient *facts* from which a court may reasonably infer that a party acted with the requisite state of mind" (emphasis added)).

… if the court has dismissed all claims over which it has original jurisdiction."). The exercise of that discretion is guided by principles of "judicial economy, convenience, fairness, and comity." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of [these] considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Id.* at 1254-55. And the case for dismissing the state claims is even stronger when a court dismisses a federal claim under Rule 12(b)(6). Indeed, "[a]fter a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims." *Id.* at 1255.

Here, the Court exercises its discretion to dismiss all of the state-law claims (against all Defendants) without prejudice. The strong presumption in favor of dismissing those claims has not been overcome. Litigating the Credit Union's state claims in state court would not undermine judicial economy or sacrifice convenience or fairness. Moreover, litigating those claims in state court would best serve the interests of comity. Accordingly, the Court will dismiss without prejudice the Credit Union's state claims against all of the Defendants. Dismissal of those claims will result in dismissal of the entire action because they are the last remaining claims in

the now-pending First Amended Complaint and since, as described below, the Court

declines to allow the Credit Union to file yet another amended pleading.[6]

## IV

The Credit Union has moved to file a Second Amended Complaint against

Shibanov in which the Credit Union re-asserts the claims from its First Amended

Complaint and adds new claims for violation of the DTSA and for breach of contract.

The Court denies leave to amend because the Credit Union's proposed DTSA claim

is not viable and because the Court will not entertain the Credit Union's state-law

breach of contract claim (or other state claims) in the absence of any viable federal

claims.[7]

---

[6] Even if the Court had not dismissed the Credit Union's lone federal claim, it would have exercised its discretion under 28 U.S.C. § 1367(c) to dismiss the state-law claims without prejudice. Dismissal of state-law claims under that statute is appropriate where the claims are distinct from and substantially predominate over the federal claim(s). *See Burch v. Medilodge of Port Huron, LLC*, 2013 WL 1499344, at \*2 (E.D. Mich. Apr. 11, 2013); *Commodities Exp. Co. v. City of Detroit*, 2010 WL 3905482, at \*16 (E.D. Mich. Sept. 30, 2010). That is the case here. The CFAA claim is based upon Shibanov's allegedly-improper access to the Credit Union's computer system in 2013, and the state-law claims, in contrast, are largely based upon alleged misconduct by the Seikaly Defendants two years later. The seven state-law claims vastly outnumber the lone federal claim, and the state-law claims involve additional witnesses, additional parties, and different evidence. For these reasons (and others), the state-law claims are largely distinct from and substantially predominate over the federal claim, and the Court would have dismissed them even if the Credit Union's sole federal claim had survived.

[7] The Proposed Second Amended Complaint does not address or cure any of the deficiencies identified above in the Credit Union's CFAA claim.

## A

Federal Rule of Civil Procedure 15 allows a party to amend its pleading "once as a matter of course." Fed. R. Civ. P. 15(a)(1). Further amendments require either the "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A "court should freely give leave when justice so requires." *Id.* However, leave is not always appropriate. For instance, a court may deny a motion for leave to amend if the proposed amendment would be futile. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Id.* And "[t]o survive a Rule 12(b)(6) motion to dismiss, a complaint must contain 'sufficient factual matter, accepted as true, to state a claim that is plausible on its face.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

## B

The Credit Union's proposed DTSA claim could not withstand a motion to dismiss. In order to properly state that claim, the Credit Union was required to allege "(1) the existence of a protectable trade secret; (2) misappropriation of [the] trade secret[] by the defendant; and (3) damages." *Phyllis Schlafly Revocable Tr. v. Cori*, 2016 WL 6611133, at *2 (E.D. Mo. Nov. 9, 2016); *see also Space Data Corp. v. X*,

2017 WL 3007078, at *2 (N.D. Cal., July 14, 2017) (same). It failed to do so. It did not sufficiently allege that its information constituted a protectable trade secret.

Information constitutes a trade secret under the DTSA only if, among other things, (1) the owner of the information took "reasonable measures to keep [it] secret" and (2) "the information derives independent economic value . . . from not being generally known" and "not being readily ascertainable." 18 U.S.C. § 1839(3).[8] The Credit Union has not sufficiently pleaded that either of these circumstances exists with respect to the information taken from its computer system.

_____

[8] The DTSA defines the term "trade secret" as:

. . . all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if —

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

**1**

In opposing the Credit Union's motion for leave to file its proposed Second Amended Complaint, Shibanov argued that the proposed pleading includes "no allegations" that, if true, could support a finding that the Credit Union took reasonable measures to protect the confidentiality of the information and documents at issue here. (Shibanov Opp. to Mot. for Leave to File Second Am. Compl., ECF #31 at Pg. ID 968.) The Credit Union never responded to that argument and has never attempted to show in its briefing how its "reasonable measures" allegations are sufficient. Shibanov's unrebutted attack on the Credit Union's "reasonable measures" allegations is well taken.

The Credit Union generally alleges that it "has taken reasonable measures to guard the secrecy of the information." (Proposed Second Am. Compl. at ¶52, ECF #27-1 at Pg. ID 636.) In support of this assertion, the Credit Union directs the Court to two policies that are attached to its proposed Second Amended Complaint: its "E-Commerce Policies and Procedures" and its "Employee Fraud Policy." (*See id.* at ¶¶ 15-16, 56, Pg. ID 625, 637; E-Commerce Policies and Procedures, ECF #27-3 at Pg. ID 654; Employee Fraud Policy, ECF #27-4 at Pg. ID 656.) The Credit Union has failed to establish that these policies, individually or collectively, qualify as "reasonable measures."

The E-Commerce Policies and Procedures is not specifically directed toward protecting confidentiality. Instead, it sets forth general parameters for the operation of the Credit Union's e-commerce and computer systems. For instance, the first paragraph of the policy provides that "[m]embers will be able to sign up for internet financial services themselves." (E-Commerce Policies and Procedures at ¶1, ECF #27-3 at Pg. ID 654.) Other provisions address the frequency of virus scans, identify the types of electronic transactions available to members, prohibit the use of offensive language in emails, and advise employees that they should have no expectation of privacy in the websites they visit while using Credit Union computers. (*See id.*) These matters have nothing to do with protecting confidentiality.

The Credit Union's proposed Second Amended Complaint appears to suggest that one specific provision of its E-Commerce Policies and Procedures is intended to preserve confidentiality. (*See* Proposed Second Am. Compl. at ¶15, ECF #27-1 at Pg. ID 625.) That provision states that "all e-mail messages created, sent or received on the system, are the credit union's property." (Proposed Second Am. Compl. at ¶15, ECF #27-1 at Pg. ID 625.) But that provision speaks to ownership issues, not confidentiality matters.[9] The Credit Union simply has not shown that its E-

---

[9] One of the sixteen provisions of the E-Commerce Policies and Procedures not specifically mentioned by the Credit Union arguably touches on confidentiality issues. Paragraph 11 says: "Employees are prohibited from using any password that is not known to the credit union, and must safeguard their passwords and other security information. Deliberately obtaining access to information or e-mail

Commerce Policies and Procedures is a reasonable measure for insuring confidentiality.

Likewise, the "Employee Fraud Policy" is merely a general prohibition against "any fraudulent and/or dishonest acts, including theft of any kind while employed with [the Credit Union]." (*Id.* at ¶16, Pg. ID 625.) It does not specifically address any confidentiality issues. (*See* Employee Fraud Policy, ECF #27-4.)

Furthermore, the Credit Union has not cited a single decision in which any court has found that a plaintiff took "reasonable measures" under circumstances like those identified in its proposed Second Amended Complaint. The two policies identified by the Credit Union fall far short of the measures to secure confidentiality taken by the plaintiff in *Xoran Holdings, LLC v. Luick*, 2017 WL 4039178 (E.D. Mich. Sept. 13, 2017), a case cited by the Credit Union in its motion for leave to file the Second Amended Complaint.[10] The plaintiff in *Luick* required its employees to

_____

messages intended for others is prohibited." (E-Commerce Policies and Procedures at ¶11, ECF #27-3 at Pg. ID 654.) But the Credit Union has not directed the Court to any authority for the proposition that this single provision amounts to "reasonable measures." Notably, the provision does not expressly require the use of passwords, nor does it provide that any particular information or system is password-protected. And while the provision prohibits the accessing of information "intended for others," it does not impose confidentiality restrictions on information that an employee is authorized to obtain and view.

[10] The Credit Union made no effort to explain in any detail how its allegations line up with the allegations in *Luick*. Instead, the Credit Union simply asserted that "this Court's initial interpretation regarding application of the DTSA to a similar set of facts appears to have taken place by way of a written opinion entered on September

sign employment agreements with substantial confidentiality provisions that imposed significant limits on the uses and disclosure of the information in question and that required the employees to destroy all copies of the information upon termination of employment. *Id.* at **1, 6. The Credit Union's DTSA claim identifies no similar protective measures. *Luick* thus does not support the Credit Union's claim that it took reasonable measures to protect its information. And because the Credit Union has failed to identify such measures in its proposed DTSA claim, it has failed to plausibly allege the existence of a "trade secret" protected by the DTSA.

2

All of the Defendants contend that the Credit Union has not sufficiently alleged that the information in question has the "independent economic value" required to qualify as a "trade secret." (*See* Seikaly Defs' Opp. to Mot. to File Second Am. Compl., ECF #30 at Pg. ID 928-933; Shibanov Opp. to Mot. to File Second Am. Compl., ECF #31 at Pg. ID 969-70.) The Court agrees.

Information has "independent economic value" under the DTSA only where "another person" could "obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Thus, "[t]o have independent economic value, 'the secret information must afford the owner a competitive advantage by having

13, 2017. *Xoran Holdings, L.L.C. v. Luick*, 16-13703 (E.D. Mich. 2017)." (Mot. for Leave to File Second Am. Compl., ECF #27 at Pg. ID 618.)

value to the owner *and potential competitors*.'" *Giasson Aerospace Sci., Inc. v. RCO Eng'g*, Inc., 680 F.Supp.2d 830, 843 (E.D. Mich. 2010) (emphasis added) (quoting *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 Fed. App'x 916, 922 (6th Cir. 2008)).[11]

The Credit Union's proposed allegations do not establish that the information taken from its computers had "independent economic value." The Credit Union alleges only that the information was "highly valuable *to it* [*i.e.*, to the Credit Union, *itself*], as confidentiality of the records must remain private pursuant to bank secrecy laws and state and federal civil and criminal statutes." (Proposed Second Am. Compl. at ¶55, ECF #27-1 at Pg. ID 636; emphasis added.) The Credit Union's allegations say nothing about the economic value of the information to a competitor or anyone else. Instead, the Credit Union defines the value of the information based upon the regulatory consequences of disclosure, not based upon its value to some

---

[11] The *Giasson Aerospace Science, Inc.* court was interpreting the Michigan Uniform Trade Secrets Act (the "MUTSA"). 680 F. Supp. 2d at 839 (interpreting Mich. Comp. Law. § 445.1902). The MUTSA "adopt[s] the Uniform Trade Secrets Act ([the] "UTSA"), which provides a statutory action and remedies for [the] misappropriation of trade secrets." *Compuware Corp. v. International Business Machines Corp.*, 2003 WL 23212863, at *8 (E.D. Mich. Dec. 19, 2003). The DTSA has a similar trade secret definition to the UTSA and was intended to be substantially similar to the UTSA definition. *See* H.R. REP. 114-529 ("While other minor differences between the UTSA and Federal definition of a trade secret remain, the Committee does not intend for the definition of a trade secret to be meaningfully different from the scope of that definition as understood by courts in States that have adopted the UTSA.").

other entity competing for its customers.  Because the Credit Union fails to allege that the information in question had "independent economic value," it has failed to plead the existence of a protected "trade secret."  Therefore, its proposed amendment adding a DTSA claim is futile.

## C

In sum, the Credit Union's proposed Second Amended Complaint does not assert any viable federal claims.  Neither the CFAA claim (which mirrors the deficient CFAA claim in the First Amended Complaint) nor the DTSA claim in that proposed pleading states a claim on which relief can be granted.  Accordingly, the Court will not permit the Credit Union to file its proposed Second Amended Complaint in this action and will require the Credit Union to litigate in state court its state-law claims against the Defendants.

## V

Because the Court is dismissing all of the claims against all of the Defendants and is denying leave to file a Second Amended Complaint, the Court **DENIES** the Credit Union's Motion for Preliminary Injunction. (*See* ECF #7.)  For the same reasons, the Court also **DENIES** the Credit Union's Motion for Temporary Restraining Order and/or Preliminary Injunction. (*See* ECF #38.)

Finally, the Court **TERMINATES AS MOOT** Defendants Seikaly and Seikaly, Stewart & Bennett P.C.'s motion to dismiss the initially-filed Complaint. (*See* ECF #9.)

## VI

For the reasons stated above, it is hereby ordered that:

- Defendant Shibanov's Motion to Dismiss (ECF #32) is **GRANTED** with respect to the CFAA claim, and the CFAA claim in the First Amended Complaint (ECF #12) is **DISMISSED WITH PREJUDICE**;

- All of the remaining state-law claims in the First Amended Complaint are **DISMISSED WITHOUT PREJUDICE**;

- The Credit Union's Motion for Leave to File Second Amended Complaint (ECF #27) is **DENIED**;

- The Credit Union's Motion for Preliminary Injunction (ECF #7) is **DENIED**;

- The Credit Union's Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF #38) is **DENIED**; and

- Defendants Seikaly and Seikaly, Stewart & Bennett P.C.'s Motion to Dismiss the Complaint (ECF #9) is **TERMINATED AS MOOT**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 27, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 27, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764